Parker, C. J.
In the case of Wiggin & Al. vs. Amory, it was decided by us that the mere fact of taking a commission as a letter of marque, after a policy had been effected upon goods shipped on board a merchant vessel, without the knowledge or consent of the underwriter, had no effect upon the policy ; the Court not admitting the doctrine, that a temptation to deviate avoided the contract, as was laid down in the case of Denison vs. Modigniani.
But it was also decided that the actual use of such a commission, by capturing a vessel, when by such capture a delay of the voyage, although but for a short time, was the consequence, did discharge the underwriters ; because it amounted to a deviation not justified by necessity, and because such act was not provided for in the policy; the ship being insured as a merchant vessel only, without reference to any other employment, (a)
*20 The facts in the case at bar are in all respects like those which appeared in the case of Wiggin & Al. vs. Amory, except that in the present case the jury have found that, before the defendant sub scribed the policy, he knew that the ship was armed and equipped, and commissioned as a letter of marque.
We are now to determine what effect this knowledge will have upon the contract of assurance; and after some doubt, we are all of opinion that the underwriter is not for that cause liable. The knowledge that a vessel is armed, and has a commission, does not necessarily carry with it an assent that the vessel shall do any thing which may cause a delay of her voyage, or that her commission shall be used, except for defence. It may be that she is armed only for the purpose of defence, and that her commission is to be used only to * justify the attack of such vessels as may come in her way; and possibly the capture of such vessels, if that can be done without delaying the voyage. And the knowledge of such armament and commission may render it unnecessary to represent the true state of the vessel, in order to make the underwriter liable, in case the risk should be increased thereby. But it cannot amount to an assent that any deviation from, or delay of, the voyage should take place, in consequence of the new character of the vessel. By the policy it appears that a merchant vessel was insured for a mercantile voyage only; and to bind the underwriter, in case any other use should be made of her, there ought to have been a stipulation to that effect in the policy.
It is laid down by Marshall, (p. 277,) that the voyage must be truly and accurately described in the policy. The voyage insured by the policy in this case, is from Bayonne to her port of discharge in the United States. Had the vessel been described as a letter of marque, it is held that the insured would be protected, even if a departure from the course of the voyage had taken place *21 m pursuit of a vessel which had hove in sight during the voyage. But this is upon the supposition that it is intended to insure the vessel with the usual privileges of one so commissioned. The same inference, however, cannot be drawn from the mere knowledge that she is so commissioned. For that knowledge may not be inconsistent with a belief and expectation that she will, nevertheless, pursue her voyage home without interruption, being armed solely for the purpose of defence.
No instance can be found, where the knowledge of the underwriter that a deviation was intended, has been set up in excuse for such deviation, or to avoid the effects of it. Such a fact could only be proved by evidence extrinsic to the policy, and, in fact, contradictory to the terms of it; so that by the rules of evidence, which are said to apply as strictly to these contracts as to deeds, no such fact could be inquired into. If the * insured means to protect himself in any adventure, which does not fall within the usual provisions of a policy, or within the known usage of the voyage he insures, he should insist upon a stipulation, which will accommodate his views; and not trust to evidence, which the law will not allow, to vary the bargain, which is proved by the writing. (b)
Upon this principle alone, that no parole evidence shall be received to vary the terms, or change the effect, of a written insfou ment, it would be very clear that the plaintiffs could not'prevail upon the ground which is assumed.
If it should appear a harsh construction of these contracts between merchants, that an underwriter should be permitted to allege, in avoidance of his contract, an act done in virtue of a commission taken by the vessel, when he knew, at the time of his entering into his contract, that the vessel was so commissioned, it would be a sufficient answer for us, that, such is the law. If there is any violation of good faith, it is not for us to award the penalty. But' it may be said, in behalf of the underwriter who offers this defence, that nothing is proved to have been assented to by him, but that the vessel should be armed and commissioned ; and that the use of her commission, for any other purpose than safety and defence, may have been as unexpected to him, as a chase or a cruise in quest of prizes. All that we have to do, however, is, to ascertain and declare the law upon the case before us; and we are confident that the fact found by the'jury does not entitle the plaintiffs to recover

Plaintiffs nonsuit.

 [In Haven vs. Holland, Mason, 230, Mr. Justice Story said, “ Whether a vessel oe commissioned or not, she has a right to repel any attempt of an enemy, and to pro tect and defend herself by all reasonable precautions ao-ainst a meditated hostile attack *20 If a vessel, supposed to be an enemy cruiser, be in sight, and apparently intend an attack upon a merchant vessel, the master of the latter is bound to exercise his best skill and judgment as to the time and mode of his defence, and if he act honestly and fairly, he will be justified, whatever may be the event. He is not bound to make his escape in the first instance, and, on a failure of this, to meet the enemy. He may lay to or chase the enemy, if he deem that the most effectual way to secure his object. The only question, in cases of this nature is, whether what is done is fairly attributable to a mere intention of self-defence, or to motives of another nature, such as a desire of profit. If the latter, then it is a deviation.” “ If the capture was made in self-defence, the master had a right to take possession of his prize, and if, without injuriously weakening his own crew, he could man the prize, he had a right to do so, and the delay for the purpose was not a deviation. He had a right to make the capture effectual, to prevent the enemy from recommencing the attack, or giving information to other cruisers. The right of capture drew after it the other incidents. It would be most mischievous to the interests of trade, and discourage men from making a gallant defence, by knowledge that in no event could they reap a reward for thei? victory.” — See Whitney vs. Haven, 13 Mass. Rep. 172. — Ed.]

 [Ewer vs. The Washington Insurance Company, 16 Pick. 502. — Ed.]