PITT HOLMES & others *vs.* THE CHARLESTOWN MUTUAL FIRE INSURANCE COMPANY.

An application for insurance against loss of a meeting-house and its fixtures by fire was made to a mutual fire insurance company that could not, by statute and its own by-laws, insure upon any building an amount exceeding three fourths of the value thereof; and in the application the value of the building was stated to be $4000: The company executed a policy, insuring, under the conditions and limitations expressed in its own by-laws and in the statute regulating mutual fire insurance companies, $3500 on the meeting-house and fixtures: The house was destroyed by fire, and the company paid $3000 to the assured, towards the loss. In a suit on the policy to recover the balance of $500, it was *held*, that the assured could not recover; that the statement of the value of the house and fixtures, in the application for insurance, was conclusive on the assured, so that they could not be permitted to show that the property insured, at the time of the insurance, was of such a value that $3500 did not exceed three fourths thereof.

In the trial of an action on a policy of insurance which is explicit as to the property insured, parol evidence is not admissible to show a mistake, and that it was the intention to insure other property.

ASSUMPSIT on a policy of insurance, dated May 9th 1840, whereby the defendants caused the plaintiffs, as trustees of the Methodist Episcopal Society in Worcester, to be insured against loss or damage by fire, for seven years, under the conditions and limitations expressed in the statute regulating mutual insurance companies, (Rev. Sts. *c.* 37,) and the rules and regulations of the defendants, "thirty five hundred dollars on their meeting-house and fixtures in the same, situated in Worcester." The defendants' rules and regulations, referred to in the

policy, were printed on the same sheet with the policy; and the 14th article was thus : "No more than three fourths of the value of any building shall be insured by this company, and as much less as the insured may choose."

At the trial before *Wilde*, J. it appeared that the meeting-house was destroyed by fire, on the 19th of February 1844, and that the defendants, on the 5th of June 1844, paid $3000 to the plaintiffs towards the loss, " the receipt of said sum in no wise to prejudice any rights said trustees may have to recover any further sum which they claim of said company, under and by virtue of said policy of insurance."

The defendants took various grounds of defence at the trial, and argued various questions before the full court, which ultimately proved to be immaterial, and are here omitted.

The plaintiffs' application for insurance was given in evidence by the defendants, and was as follows: " For the sum of three thousand five hundred dollars, to wit :

" On the meeting-house and fixtures in the same.

" Furniture and other moveables in the same, $500."

To the interrogatory, " What is the value of each building, exclusive of the land ? " the answer was, " $4000."

And to the interrogatory, " Value of furniture and moveables ? " the answer was, " $1000."

The plaintiffs insisted that the risk on the meeting-house and fixtures was one and inseparable, and that if three fourths of the house and fixtures were, at the time of effecting the policy, of the value of $3500, and if they showed a loss, whether of the house, or the fixtures, or both, then they would be entitled to recover in this action. And they accordingly proceeded to show that the meeting-house, including the pews, (the property of which the defendants contended was not in the plaintiffs,) was of the value of $5000. The defendants objected to this evidence, on the ground that the representation of value, in the application for insurance, was conclusive upon the plaintiffs. The plaintiffs then proceeded to show that the value of the stoves, carpeting, lamps, pulpit trimmings, &c., was $437. These, the plaintiffs contended,

were fixtures, appurtenant to the house, and would have been covered by the policy on the house only.

The defendants contended that it appeared from the paper that there was an application for only $3000 on the house, and that the $500 was on the furniture and moveables in the house, called in the policy fixtures, and that the risks were separate, the one being on the house, and the other on furniture and moveables, and that the mistake was in the policy, in not separately valuing them. The defendants further contended that the misrepresentation as to value of the fixtures, or furniture, or moveables, they being estimated at $1000, when worth only $437, avoided the policy.

The defendants called W. Greenleaf, their agent in Worcester, as a witness, who testified that he filled up the application for insurance, according to the directions of E. Goulding, one of the plaintiffs, who was present when it was filled up.

The plaintiffs then attempted to cross-examine this witness, with a view of showing, from his testimony, that there was a mistake in filling up the application ; that when he filled it up, he misunderstood Goulding, who told him that the plaintiffs wished their meeting-house and the fixtures therein insured, and that no mention was made of furniture or moveables, when the application was made out, the object being to get only the real estate and appurtenances insured ; that the plaintiffs applied, in fact, for insurance of the meeting-house and appurtenances for $3500 ; and that if there was an application for insurance on the moveables, furniture, &c. the defendants did not include, nor intend to include them in this policy. And the plaintiffs offered to show, by this and other evidence, that there was a mistake in the application, as filled up. But the judge ruled that the evidence was inadmissible.

A nonsuit was entered by consent, subject to the opinion of the whole court (among other things not now important) on the admissibility of said rejected evidence, and the right of the plaintiffs, on the other facts, to recover the balance of $500 on the policy.

*Barton & Bacon* for the plaintiffs.

*C. Allen,* for the defendants.

HUBBARD, J.    Several questions of some importance have been raised and argued in this case, which it is unnecessary to decide.    The question on which the case turns is, What sum was actually insured? the defendants having paid all which they acknowledge to be due, before the trial of the action.

The policy itself is explicit.    It assumes the risk as follows: Under the conditions and limitations expressed in the statute regulating mutual insurance companies, and the rules and regulations of the company, " the sum of thirty five hundred dollars on their meeting-house and fixtures in the same, situated in Worcester aforesaid, on Columbia Street, being not more than three fourths the actual value of said property as appears by the application for this insurance, lodged with the secretary of this company."

The rules and regulations referred to are to be taken as part of the contract, in the same manner as if they had been introduced into the body of the policy; and are to be construed either as representations or stipulations and agreements, according to their nature and intent.    They differ from the representations relating to marine risks, which representations are the statements or basis upon which the contract is founded, and are not treated as a part of the contract itself.    As the owner of a vessel and cargo is generally in a position to know the character, value and situation of the property to be insured, much better than the underwriter, his representations are received and acted upon as true; and if afterwards they turn out to be false in some matter or thing material to the risk, then, in consequence of such misrepresentation, the contract is avoided, although the statement was made in ignorance or through mistake, and not from a fraudulent design.    But in fire policies a different practice prevails, and the representations, so far as they are distinctly referred to in the policy, become parts of the contract, and are to be construed with it. *Houghton* v. *Manufacturers Mutual Fire Ins. Co.* 8 Met. 114.

As to these defendants, it is one of their regulations, (Art. 14,) that " not more than three fourths of the value of any

building shall be insured by this company." This is agreeable to the provision of the Rev. Sts. c. 37, § 28, on the subject of mutual fire insurance companies, which is, that ' they may insure, for a term not exceeding seven years, upon any building within this State, any amount not exceeding three fourths of the value thereof." This is a wise and salutary provision, and serves alike for the protection of the stockholders and the individual insured. The design is to prevent frauds and negligence, by making it an object with the owner to guard his property from exposure to fire and to preserve it from destruction when the calamity comes; and by this increased security to induce honest persons, who are men of property, to become members of such companies, and who will be able and willing to contribute in the event of loss.

In the contract now under consideration, the value of the building insured is not stated in the policy, and we are to resort to the application, for the purpose of ascertaining that value. It will not answer to take the sum insured as furnishing the evidence of the value of the property by adding one third to it; because, if this would be sufficient, the valuation would become a matter of form only, and the contract would in fact be regulated, not by the value of the property, but by the sum insured; a species of insurance which it was not the intent of the legislature to countenance, when granting such acts of incorporation.

On referring to the application, the value of the building is agreed to be four thousand dollars; and the plaintiffs now ask liberty to show that it was, in fact, worth a much larger sum, at the time of the insurance. But such evidence is inadmissible, and the valuation, if made in good faith, is binding on both parties. The converse of this proposition has arisen in two cases upon fire policies, and in them it is distinctly settled that the companies were concluded on the question of overvaluation, the same not being fraudulent. *Borden* v. *Hingham Mutual Fire Ins. Co.* 18 Pick. 523. *Fuller* v. *Boston Mutual Fire Ins. Co.* 4 Met. 206. If then underwriters are precluded from going into evidence to

show an overvaluation, when no fraud is alleged, owners must in like manner be concluded, when the property is undervalued.

The value being fixed at four thousand dollars, the contract does not, by law, cover more than three fourths of that sum ; for it is admitted, and very properly, that the words " and the fixtures in the same " do not constitute the subject of a separate insurance. The fixtures are a part of the building itself, and are included in the estimates of its value. They are like the term " appurtenances " when applied to the insurance on a vessel.

In looking at the application, we are strongly inclined to the opinion that the plaintiffs intended to insure three thousand dollars on the building, and five hundred dollars on the furniture and other moveables ; but the policy is express as to the subject of the insurance, and we cannot change the contract and make one for the parties, and apply the insurance to chattels not insured, because the plaintiffs intended to insure them. *Higginson* v. *Dall*, 13 Mass. 96. *Wiggin* v. *Boardman*, 14 Mass. 12. *Ewer* v. *Washington Ins. Co.* 16 Pick. 502. *Miller* v. *Travers*, 8 Bing. 244.

It is said that the proposals were filled out by the agent of the defendants, and so the company are bound either to admit parol evidence of the alleged mistake, or to alter the policy in conformity to the application. The person who made out the proposals was at least as much the agent of the plaintiffs as of the company, in doing this act ; but however viewed, it cannot affect the contract as it exists, nor open the door for the admission of parol evidence to alter its provisions. In what manner a court of equity would treat an application to amend a policy, we are not called upon here to decide.

Besides ; the policy was delivered to the plaintiffs, and they must be presumed to have examined it at the time they received it, to have known what it contained, and to have understood its import. But they slept over it nearly four years, without requesting any alteration therein, until

the loss happened, when the rights and liabilities of the respective parties were fixed, and the directors might not feel authorized to alter the terms of the policy.

The plaintiffs, having received three fourth parts in value of the building, as insured and valued by the terms of the contract, the nonsuit must stand.