## CAMPBELL *v.* THE MERCHANTS AND FARMERS' MUTUAL FIRE-INSURANCE CO.

If the application for insurance in a mutual fire-insurance company is taken by an agent of the company, and he is aware of facts, material to the risk, which are not set forth in the application, the company will be charged with knowledge; and in such a case an unintentional concealment or misrepresentation will not make void the policy.

An agent of a company, established by the laws of Massachusetts, who resided in this State, made out an application, which was signed by the insured, for the insurance of personal property in a building in which was a small steam.boiler — a fact well known to the agent, but not stated in the application. By the rules of the company, buildings in which steam power was employed were not insurable. There was no evidence of fraud or intentional concealment on the part of the insured. — *Held,* that the company could not take advantage of the defect in the application to avoid the policy.

ASSUMPSIT, on a policy of insurance. The legal and proper organization of the company was admitted and the due execution of the policy. The corporation had its place of business at Worcester, Mass. The loss occurred on the 5th of February, 1856, and resulted in a total destruction of the property insured, which property was the plaintiff's, and was unincumbered. The company were duly and properly notified of the loss.

The property was situated in a brick building known as

Patten's building, in Manchester, in this county. The whole of Patten's building was consumed at the time of the fire. In the back part of the basement of the building was a small steam engine and boiler, used for propelling printing-presses and some other small machinery

The engine and boiler-room was separated from the part of the building in which the plaintiff's property was, by a brick wall or partition, in which there were doors and windows opening into the part of the building where the property of the plaintiff was.

Cross & Topliff acted as agents of the company, in receiving applications and forwarding them to the secretary's office, and the company received the applications and issued the policies and forwarded them to Cross & Topliff, who delivered them to the parties insured; or, if the company rejected the applications, notice was sent to Cross & Topliff. The corporation furnished the blank applications to Cross & Topliff. Cross & Topliff had been such agents for about a year previous to the issuing of the policy in this case to the plaintiff. They received pay for their services, by the payment for the policies and a percentage on the premiums, and forwarded the balance of the premiums to the company at their office.

Cross & Topliff occupied the same building as the plaintiff.

The application in this case was taken and drawn up by E. M. Topliff, Esquire, one of the firm of Cross & Topliff, in the absence of the plaintiff, who afterwards signed it.

Mr. Topliff knew all the facts in regard to the situation and location of the steam engine and boiler, and also in regard to the situation and location of the plaintiff's property which was insured.

By the rules and regulations of the company, a printed copy of which was attached to the policy, buildings in which steam power was employed were excepted from those that should be insured.

It was agreed that this case should be submitted to the court upon the foregoing statement of facts, and that judgment should be rendered for the plaintiff or the defendants, as the court should be of opinion.

*Morrison & Stanley*, for the plaintiff.

1. The application is sufficiently full and definite, and contains all the information which the applicant was bound to reveal. Where the company obtains its information concerning the condition and situation of the property insured by means of printed applications, with interrogatories for the applicant to answer, it is sufficient if he answers fully and truly all matters brought to his notice. Angel on Insurance, sec. 151.

The 5th interrogatory, the only one which in any way relates to the use of fire in the building, for any thing that appears in the case, is fully and truly answered; and if the company desired more particular information, they were bound to insert interrogatories calculated to elicit such information. *Strong* v. *Man. Ins. Co.*, 10 Mass. 44.

2. The company is bound by the act of its agent, and will be charged with the same amount of knowledge as possessed by the agent; and if all the facts and all the circumstances pertaining to the risk or condition of the property are known to him, the company cannot avoid the policy on the ground of suppression or concealment of facts in a case free from all suspicion of fraud. *Masters* v. *Madison County Insurance Co.*, 11 Barber 624; *Marshall* v. *Columbian Mu. Fire Ins. Co.*, 27 N. H. (7 Foster) 157; Angel on Insurance, sec. 470; *Hartford Protective Ins. Co.* v. *Harmer*, 2 Ohio (N. S.) 452; *The Howard Fire Ins. Co.* v. *Bruner*, 11 Harris 60.

In *Macmorran* v. *Newcastle Fire Ins. Co.*, 3 Dow 255, it was held that, even in a case of warranty, it would be a good answer that the mistake or misrepresentation was attributable solely to the insurers or their agent.

The law, as established in the cases above cited, and which are analogous to the case at bar, we think is sustained by the plainest dictates of justice, and the highest considerations of public policy; and in the emphatic language of the court, in the case cited from the 11th of Barber, it would seem little less than "legalized robbery" to allow these insurance companies, after having received all the benefit of the risks, accruing to them, to shield themselves from liability, in case of loss, under some ingeniously devised technicality, or the culpability or incompetency of their own agents.

3. The company cannot avoid their policy on the ground that it is contrary to the provisions of their by-laws (Art. 9) to insure buildings in which steam power is employed. 1st: Because in this case there is no insurance of the building, but merely of personal property, against which there is no provision of the by-laws; and, 2d, for the reason that if the company insure contrary to the provisions of their by-laws, it is not a defence of which the company can avail themselves in an action against them upon the policy; otherwise they would "take advantage of their own wrong."

The by-laws are rules for the company's guidance; created, amended and repealed by them, which, if they waive or violate, such waiver or violation will not be allowed to operate to the prejudice or injury of the innocent party with whom the company has made a contract of insurance.

*Cross & Topliff*, for the defendants.

By the application of the plaintiff, he contracts in these words, "And the said applicant hereby covenants and agrees to and with said company, that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the title, condition, situation, value and risk of the property to be insured, so far as the same

are known to the applicant, and are material to the risk." The third question in the application is, "Of what materials is the building constructed, and for what purpose occupied?" The answer does not give the most important information which such a question should have elicited. A steam engine, with the usual apparatus of steam power, was in the building: a fact not disclosed.

Upon this false or imperfect application the insured receives his policy, and this policy is a part of the contract between the two parties. What is this contract? It is that he shall be insured "agreeably to the rules of said company hereunto annexed," "under the conditions and limitations expressed in the rules aforesaid," "that the application shall form a part," &c.

And the rules which the applicant agreed to, and which makes a part of his contract, are that this company will not insure against loss or damage by fire upon any building (and of course property in such building) in which the manufacture of wool, cotton, &c., is carried on, or steam power is employed.

Article 12th of the rules is in part as follows: "Policies shall become void and of no effect, &c., if the application shall not contain full, fair, and substantially a true representation of all the facts and circumstances respecting the property, as far as they are within the knowledge of the assured, and material to the risk.

The applicant signed a covenant that he had complied with the above conditions. It was the duty of the applicant to know, before signing this covenant, whether he was putting his name to the truth, or to what was false; and his falsehood in the covenant alone would rebut the ordinary inference of knowledge of the company arising from the information of the agent.

The policy refers to the application as a part of the contract to be taken in connection with the policy — therefore the application is a warranty. *Farmers' Ins. and Loan Co.*

v. *Snyder,* 16 Wend. 481; *Wall* v. *Howard Ins. Co.,* 14 Barb. Sup. Co. 383; *Burritt* v. *Saratoga Co. Mutual Ins. Co.,* 5 Hill 188; *Egan* v. *Mutual Ins. Co.,* 5 Denio 326; *Fowlers and al.* v. *Ætna Ins. Co.,* 6 Cowen 673; *Williams* v. *N. E. Fire Ins. Co.,* 31 Maine 219; *Kennedy* v. *The St. Lawrence County Mutual Ins. Co.,* 10 Barb. 285; *N. Y. Central Ins. Co.* v. *National Protective Ins. Co.,* 20 Barb. 468.

If the warranty is not complied with in all particulars, the insurer is discharged. *Kennedy* v. *The St. Lawrence County Mutual Ins. Co.,* 10 Barb. 285; *Farmers' Ins. and Loan Co.* v. *Snyder,* 16 Wend. 481; *DeHayn* v. *Hartly,* cited 2 Denio 81.

In the case *Marshall* v. *The Columbian Mu. Fire Ins. Co.,* 27 N. H. (7 Foster) 157, relied on by the plaintiff, the point whether the company were chargeable with the knowledge of their agent, was not a point in the case, and is a mere *dictum.* On this point we ask the attention of the court to the following: " The rule which prevails upon sales of property that a warranty does not extend to defects known to the purchaser, does not apply to warranties contained in policies of Insurance. *Kennedy* v. *St. Lawrence Co. Mutual Ins. Co.,* 10 Barb. 285; *Jennings* v. *The Chenango Ins. Co.,* 2 Denio 75.

If there be in the policy a warranty, which is broken, the fact that the agent of the insurance company drew the application, and knew of the defect, is immaterial. *Kennedy* v. *St. Lawrence County Mutual Ins. Co.,* 10 Barb. 285; *Jennings* v. *The Chenango Ins. Co.,* 2 Denio 75; Marshall on Ins., 347.

The plaintiff cannot compel the company to pay, on the ground that the provisions of the by-laws refer only to buildings, not to personal property. The application states that " the same description should be given of the building containing the personal property as if insurance is wanted on the building itself." A building, *per se,* is personal property. A warrant, in a policy of insurance, as to posi-

tion, &c., extends to the goods in the building described. *Kennedy* v. *St. Lawrence Mutual Ins. Co.*, 10 Barb. 285; *Wilson* v. *The Herkimer Co. Mutual Co.*, 2 Selden 53. The company do not take advantage of their own wrong, but resist an attempt of the plaintiff to take advantage of his own wrong. The company did not in this case waive its by-laws, but were deceived into their violation by the falsehood of the applicant.

EASTMAN, J. The case agreed upon by the parties shows no fraud in the plaintiff, in effecting the insurance, but the application did not give a full description of the building in which the property insured was situated. It omitted to state that there was a small steam engine in the building, which fact, according to the rules and regulations of the company, would have prohibited the issuing of a policy upon the building itself, and, by implication, upon the property therein.

This regulation or by-law, however, would not make void a policy issued by the directors in contravention of the by-laws, if the policy was not voidable upon other grounds. A by-law is not a limitation and restriction of the power which is lodged by the charter of a company in the board of directors; and it can have no higher effect in this respect than instructions, or a general regulation, adopted by the directors themselves, as a convenient guide in ordinary cases. *Union Mu. Fire Ins. Co.* v. *Keyser*, 32 N. H. 313.

This policy, then, cannot be avoided unless it be upon the ground that the application, which, according to the terms of the policy, forms a part of the contract of insurance, did not set forth all the facts and circumstances material to the risk.

It is a general rule that whatever is material to the risk must be correctly set forth in the application, if it forms a part of the policy; otherwise the policy will be void. *Car-*

*penter* v. *American Ins. Co.*, 1 Story 57; *Fowler* v. *Ætna Ins. Co.*, 6 Cowen 673; *Davenport* v. *The New-England Co.*, 6 Cushing 340.

But in *Marshall* v. *The Columbian Mu. Fire Ins. Co.*, 27 N. H. (7 Foster) 157, it was held that where the application is taken by an agent of the company, and he is aware of facts material to the risk, but which are not set forth in the application, the company will be charged with knowledge; and that, under such circumstances, an unintentional concealment or misrepresentation will not make void the policy. The same principle was alluded to in *Leathers* v. *Farmers' Mu. Fire Ins. Co.*, 24 N. H. (4 Foster) 262. As, however, the point has not been very fully considered by the courts of this State, and the counsel for the defendants have cited several cases of high authority, sustaining a different doctrine, we have thought it proper to examine the question at some length, with a view to test the accuracy of the position.

So far as the insurance companies in this State are to be considered, the legislature have settled the principle, by enacting that applications taken by the agents of the companies shall not be void by reason of any error, mistake or misrepresentation, unless it shall appear to have been intentionally and fraudulently made. Laws of 1855, chap. 1662, sec. 6. But that act does not apply to corporations established by the laws of other States, and consequently not to this case.

Contracts of insurance are believed to be of recent origin, when compared with many other contracts known to the law. The first allusion to the subject is said to have been made in the latter part of the fourteenth century, in the laws of Wisburg, compiled in the Teutonic language. The first English case that I have found was decided in 31 of Elizabeth, cited in 6 Coke 47. Between that time and up to 1756, *Park*, in his system of the law of marine insurances, says, that not forty cases upon the subject were to

Campbell *v.* The Merchants and Farmers' M. F. I. Co.

be found in the English books. After this the decisions in England assumed new spirit and vigor, so that Chancellor *Kent* says that there is no branch of the law that has been more thoroughly investigated than that of marine insurance, and that it is by far the most extensive and complex title in the commercial code. 3 Kent's Com. 342.

Great strictness has always been held in contracts of marine insurance. A misrepresentation or concealment of any fact material to the risk, even though it happen through mistake or accident, and though the loss arises from a cause unconnected with such misrepresentation, will make void the policy. Park on Insurance 249, 6th edit. ; 3 Burr. 1905; *Fitzherbert* v. *Mather*, 1 T. R. 12; *McDowell* v. *Frazer*, Doug. 260; *Bridges* v. *Hunter*, 1 Maule & Selw. 15.

A breach of a warranty avoids the contract *ab initio ;* and it makes no difference whether the thing warranted be material or not, or whether the loss happened by reason of a breach of the warranty or not. A warranty differs from a representation in this respect, that it is in the nature of a condition precedent, and requires a strict and literal performance ; but all express warranties must appear upon the face of the policy. 3 Kent's Com. 288. There may also be implied warranties, such as necessarily result from the nature of the contract; and in every policy it is implied that the ship is seaworthy when the policy attaches. *Law* v. *Hollingworth*, 7 T. R. 160 ; *Silva* v. *Low*, 1 Johns. Cases 184.

I apprehend that from this strictness existing in the law of marine insurance, have been drawn the rigid rules laid down by many tribunals upon fire insurance policies, and that the authorities in cases of marine insurance have been followed in actions upon policies against fire, without perhaps sufficiently adverting to the difference that exists in the knowledge of facts upon which the respective contracts are founded. *Kent* says that the strictness and nicety required in the contract of marine insurance do not so

strongly apply to insurances against fire, for the risk is generally assumed upon actual examination of the subject by skillful agents, on the part of the insurance offices. 3 Kent's Com. 373.

The severity of these rules has caused courts in many instances to endeavor to avoid their effect. Thus Lord *Mansfield*, in *Pawson* v. *Watson*, Cowper 785, says that it is the opinion of the court that to make written instructions valid and binding they must be *inserted in* (not referred to) in the policy. And *Sutherland*, J., in *Jefferson Ins. Co.* v. *Catheal*, 7 Wendell 80, also says that the doctrine of warranty in the law of insurance is one of great rigor, and frequently operates very harshly upon the assurer. And again, after discussing an application not embraced in the policy, and holding that it shall not be considered a warranty, he says : "I am not disposed to lead the way in the extension of this harsh and rigorous doctrine."

And there are authorities which hold that where inquiries are not put by the company or its agents, as to the title and situation of the property, and no fraud appears, a suppression of facts will not make void the policy. *Strong* v. *Manufacturers' Ins. Co.*, 10 Pick. 40 ; *Fletcher* v. *Com. Ins. Co.*, 18 Pick. 419 ; *Niblo* v. *North-American Fire Ins. Co.*, 1 Saund. 551.

The books abound with cases as to what are and what are not necessary disclosures, and as to what shall be held representations and what warranties ; and the authorities not unfrequently seem confused and contradictory, arising from the different construction which is put upon the applications for insurance and the effect that is given to them. And there appears to be a manifest disposition in some tribunals, which hold the rules with strictness, to bring as few cases as possible within their range.

The business of insurance against fire has greatly increased by the incorporation and establishment of mutual companies, and the mode of transacting the business, as

well as the property insured, differs very essentially from that of marine insurance. The method of doing the business in these companies also varies materially, in some respects, from that which prevails in stock companies, as they are usually termed. And were courts now, for the first time, to lay down without regard to authority the rules of law that should govern contracts made between mutual companies and their members, I apprehend that in many jurisdictions they would differ essentially from the rules which at present prevail.

As a general practice these companies require all applications for insurance to be in writing, and they make the application a part of the policy. As a general practice, also, they send out agents appointed by themselves, who are oftentimes directors of the companies, who examine the buildings and make the surveys, and make out the applications for the insured to sign. Now, aside from authority, upon what principle of right can it be said that in regard to facts which are obvious and known to the agent and company, but which are unintentionally not communicated, a different rule of law should prevail from that which exists in the sales of property ? Why should it be held that the unintentional neglect to state facts in an application for insurance, which are perfectly obvious and well known to the officers of the company, shall defeat the contract and make void the policy, while the sale of property made upon a warranty is not to be affected by any defects which are obvious to the senses ? I entirely agree with the court in *Jennings* v. *The Chenango Mutual Ins. Co.*, 2 Denio 79, when they say that it would be difficult to assign a satisfactory reason for a distinction in this respect. Why should not an insurance company be estopped from setting up defects in an application, which are known to them, as well as the owner of property who knowingly stands by and sees the property sold by a third person, without disclosing his title, be afterwards estopped from

setting up that title ?  It appears to me that the fraud in the former case is quite equal to that in the latter.

I am aware that there are many cases, and of high authority, which lay down the rule the other way, and hold that, when the application is made a part of the policy, statements contained in it are warranties, and, if untrue, the policy is void, even though the variance be not material to the risk.  The same authorities also hold that the rule which prevails upon sales of property, that the warranty does not extend to defects which are known to the purchaser, does not apply to warranties contained in contracts of insurance.  And such is the doctrine of *Jennings* v. *The Chenango County Mutual Ins. Co.*, 2 Denio 75, already cited, and which is an authority in point for the defendants. The authorities are examined at length in that case, and the conclusion arrived at that they show the policy to be void.  In closing the opinion, however, the court say : " At the same time, it cannot be denied that the application of these principles to the case under consideration operates with great severity upon the plaintiff, and is well calculated to lead to serious doubt whether the intention of the parties and the interests of justice were duly regarded in the establishment of the rule."  And they then add : " Here the mistake was proved to have been the consequence either of the ignorance, carelessness or bad faith of the agent of the defendants.  He filled up a printed blank application, furnished by the defendants, to be subscribed by the plaintiff, who probably neither had or pretended to have any information or knowledge of what such a paper ought to contain in order to render the policy available, but relied in that respect implicitly upon the agent sent out by the defendants."  The defects in that application were that the building was occupied for a further purpose than that stated in the application, and also that the surrounding buildings were not correctly given.  These facts were known to the agent, who said that the risk was

not increased, and that it was of no use to put them into the application. Still the court felt themselves bound by the authorities, and held that the application, taken in connexion with the conditions of the policy, was a warranty, and that the policy was void.

The evident harshness and severity of this doctrine, so well shown by the court in the last case cited, has since led to a different result in some cases in the same State.

In *Masters* v. *The Madison County Mutual Ins. Co.*, 11 Barb. Sup. Ct. 624, the agent of the company, on being applied to for an insurance upon the plaintiff's mill, went to see the property, and made a survey of the same — the plaintiff not accompanying him, but leaving him to transact the business, and do whatever was necessary. The agent then made out the application for the plaintiff to sign, using the printed blank furnished to agents for that purpose. He was informed at the time by the plaintiff's son that there was a mortgage on the premises, which was a lien thereon, but the application made no mention of any incumbrance. It was held that the notice given to the agent, of the incumbrance, was a sufficient notice to the company, and that the omission to set forth the mortgage in the application, was not a breach of warranty, or a concealment of important matters affecting the risk, notwithstanding the application, by a memorandum in the margin, required the applicant to state whether the property was incumbered, by what, and to what amount, and if not to state it; and although the by-laws of the company made the person taking the application the agent of the applicant; and farther, that, notwithstanding such bylaw, he was still the agent of the company, and that they were bound by his acts. See, also, *New-York Central Ins. Co.* v. *National Ins. Co.*, 20 Barbour 468.

*Kent* says that the decisions contain strict doctrines on the subject of concealment, but he adds that the insured is not bound to communicate any facts which the under-

writer may be presumed to know equally with himself.  3 Kent's Com. 285.

We would not relax any of the sound and wholesome rules which require integrity and good faith on the part of the insured, and would hold them to as strict a compliance with their contracts as we would the companies; but upon a reëxamination of the question, we think that the rule laid down in *Marshall* v. *The Columbian Mu. Fire Ins. Co.* contains the just and true doctrine.

The applicant, unused to the business of making applications, and ignorant of what is necessary to be done, trusts to the skill, knowledge and judgment of the agent to fill up the application, which is usually a blank, by giving all the information that is required by the company. He puts full confidence in the agent, and relies upon him to see that the business is done correctly, and the application made out according to the requirements of the company; and if he acts honestly and in good faith the company ought to be charged with a knowledge of all the facts that are known to the agent.  It would be unjust to the insured, after he has made such an application, paid the premium demanded, the expenses of the policy and the assessments as they are made, to permit the company, upon the destruction of the property, to say that they will not make good the loss, because their agent, whom they have authorized to act for them and make their application, has failed to make it sufficiently full.

There are many facts which an agent may know quite as well as the applicant.  Upon an examination and survey of a building, if personally made by himself, he will ordinarily become possessed of all the material facts in this respect.  The title to the property he does not investigate, and of course relies upon the statements of the applicant.  He knows the requirements of the company, and the details that should be set forth in the application, while the insured is in most cases entirely ignorant of

these matters; and if the application is unintentionally defective, upon a point well known to the agent, the company, and not the insured, should be the sufferers. The agents are to this extent, and for the purpose of taking the applications, the officers of the company.

The facts in the present case appear to come distinctly within the rule which we have endeavored to explain, and which, we think, should prevail; and we are therefore of opinion that, according to the agreement of the parties, there should be

*Judgment for the plaintiff.*