PIERCE *v.* THE NASHUA FIRE INS. CO.

A sale by one partner to another of his joint interest in property insured, is not such an alienation of the property as will avoid the policy, even under an express provision in the charter declaring that the policy shall become void upon alienation of the property by sale or otherwise.

A sale by one partner to another of his interest in property insured, accompanied by a delivery of the policy of insurance, operates as a valid assignment, and transfers to the purchaser all the seller's equitable interest in the insurance.

In such case, if the insurer, upon notice of the assignment, make a verbal promise to the assignee to pay the insurance to him in case of loss, the assignee can, upon proper averments, maintain a suit upon the policy in his own name. The declaration should set forth the original contract and policy, and the assignment thereof, as a consideration for the new promise. The equitable interest obtained by the assignment is a sufficient consideration to sustain the subsequent promise to pay to the assignee.

A suit upon a mutual insurance policy must be brought in the name of him who was a member of the company at the time of the loss.

Among the "Conditions of Insurance" annexed to a policy, was the following: "Policies of insurance subscribed by this company shall not be assignable without the consent of the company expressed by indorsement made thereon. In case of assignment made without such consent, whether of the whole policy or of any interest in it, the liability of the company in virtue of such policy shall thenceforth cease." *Held,* that this condition being inserted for the benefit of the company, they had the right to waive it; and that the declarations or acts of an agent of the company are competent to be submitted to a jury as evidence of such waiver by the company.

A & B, as partners, obtained insurance in the defendant company; and B having sold to A his interest in the property insured, A thereupon delivered the policy to an agent of the defendant, requesting a re-insurance of the property. The agent, knowing that A had bought and was the sole owner of the property, and that the policy had not been assigned, said he would have the property re-insured, but did not know what the premium would be for the next year; that he would get the new policy, and A might then pay him the amount. Subsequently A paid the premium required; and the agent then gave him a paper, which he laid away without looking at it, supposing it to be a new policy. After the destruction of the property by fire, he discovered that the paper was a renewal of the old policy issued to A & B, by a renewal receipt issued by the defendant to them, and attached to the back of the old policy. *Held,* that the agent's knowledge, and new promise or consent to the continuance

of the policy for the benefit of A, must be considered to be that of the company ; and the authority of the agent to make such contract must be presumed till the contrary be shown. ,

It was agreed that this action be transferred to the law term, upon the following statement of facts : Mower and Pierce were owners in partnership of the buildings and machinery insured, for a long time prior to December 2, 1867. The policy was issued to them, as a firm, in January, 1867. On the 2d day of December, 1867, by deed of that date, Mower conveyed his interest in the property to Pierce. The policy was not assigned, although the plaintiff was informed by the attorney who made the deed that the policy would be killed by the transfer of the property, and the mill would be at his risk. Sometime prior to January 1st, 1868, Pierce carried the old policy to Wood, and told him he wanted his mill re-insured. Wood was the agent of the company at Jaffrey, and knew fully that Pierce had bought and was sole owner of the property, and that the policy had not been assigned. Wood said he would have the property re-insured, but did not know what the premium would be for next year; would get the policy, and plaintiff might pay the amount due when it came. There might be a dividend, which would reduce the premium for the year to come. The plaintiff paid him ten dollars towards it, and Wood took the papers away, the plaintiff trusting to him to insure him properly, having knowledge of the facts. Some days afterwards Wood met Pierce on the street, and told him he had got his insurance papers around for him, and there was five dollars more to pay, same as last year. Pierce went into one of the stores and borrowed five dollars and paid Woods, and took the papers he had for him and put them into his pocket without looking at them, and took them home and laid them away among his papers without looking at them, supposing he had a new policy on his property.

The mill was destroyed by fire on the night of June 27, or morning of June 28, 1868. On the morning after the fire, a brother of the plaintiff, in looking over the plaintiff's papers, discovered that the paper was a renewal of the old policy of Mower & Pierce, by a renewal receipt issued by the company to them and attached to the back of the policy, instead of a new one. Up to this time he supposed he held a new policy. The proofs of loss were properly made and received by the company, in proper form, within the time prescribed by the conditions of the policy. There is no claim by the defendant that there was over-insurance ; nor that the full amount of premium for carrying the risk during the year 1868 has not been received. The agent, soon after the sale, having been spoken to by the plaintiff about transferring the policy, informed the plaintiff that, being one of the partners and taking the whole property, it would be all right, and the policy would be valid without any transfer; and it would not be necessary to send it to the company for their assent, as the property and business were owned and managed by one of the same parties, and the policy needed no transfer.

No other officer of the company, except the agent at Jaffrey, the **said**

Wood, was informed by the plaintiff of the change of ownership in the property until after the fire.   It is the custom of the company in transacting business to issue policies and renewals at the home office, not requiring them to be countersigned by the agent.

*Wadleigh* and *Hatch*, for the plaintiff.

*Fassett*, for the defendant.

FOSTER, J.   A sale by one partner to another, of his joint interest in the property insured, is not such an alienation of the property as will avoid the policy, even under an express provision in the charter declaring that the policy shall become void upon alienation of the property, by sale or otherwise.   Angell on Ins., § 197.   Such a condition is inserted in the charter or by-laws of insurance companies for the benefit and protection of the company against the risk of having careless or improvident persons substituted in the place of the original parties with whom they contracted.   And, in a case like the present, of a mere change of ownership among joint owners, whereby no stranger is introduced and no addition made to the number of the insured, where there is no change in the condition or situation of the property or risk, a mere assignment of his interest in the concern, by one partner to the other, is obviously not within the principle or motives on which the condition is founded.   *Niblo* v. *No. Am. Fire Ins. Co.*, 1 Sandf. Supr. Ct. R. 551 ; *Tillou* v. *Kingston M. F. Ins. Co.*, 7 Barb. 570 ; *Wilson* v. *Genesee Mut. Ins. Co.*, 16 Barb. 512 ; *Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 405 ; 1 Phil. Ins., § 872.

Among the " Conditions of Insurance " annexed to the policy issued by the defendants to Mower & Pierce, is this :

"*Ninth*. Policies of insurance subscribed by this company shall not be assignable without the consent of the company expressed by indorsement made thereon.   In case of assignment made without such consent, whether of the whole policy or of any interest in it, the liability of the company, in virtue of such policy, shall thenceforth cease."

Independent of this condition, there is nothing in the defendant's charter or by-laws which requires an assignment of a policy to be in writing ; and the sale of Mower's interest in the property insured, and the delivery of the policy, operated as a valid assignment, and transferred to the plaintiff all his partner's equitable interest in the insurance.   1 Phil. Ins., § 80 ; *Thompson* v. *Emery*, 27 N. H. 269, and cases cited ; *Shepherd* v. *Ins. Co.*, 38 N. H. 237 ; *Sanders* v. *Ins. Co.*, 44 N. H. 243.

Although in such case the equitable interests of the assignee will be protected, yet, *ordinarily*, and at common law, he cannot maintain a suit upon the original policy in his own name ; but must sue in the name of the assignor.   But if the insurer, upon notice of the assignment, promises the assignee to pay the insurance to him in case of loss, the assignee can, upon proper averments, maintain a suit upon

the policy in his own name. *Sanders* v. *Ins. Co.*, 44 N. H. 243 ; SHAW, C. J., in *Wilson* v. *Hill*, 3 Met. 66 ; *Foster* v. *Ins. Co.*, 2 Gray 216. The declaration, in such case, should set forth the original contract and policy, and the assignment, as a consideration for the new promise ; and such promise must be proved, as alleged. *Shepherd* v. *Ins. Co.*, before cited ; *Barnes* v. *Ins. Co.*, 45 N. H. 24. The equitable interest obtained by the assignment is a sufficient consideration to sustain the subsequent express promise to pay to the assignee. *Currier* v. *Hodgdon*, 3 N. H. 82 ; *Thompson* v. *Emery*, before cited.

If this action can be maintained at all, it may be maintained and prosecuted in the name, as it must be for the advantage, of the present plaintiff alone ; and more properly so than otherwise ; for, notwithstanding a general provision of the law (Laws of 1869, chap. 30, which by its terms is applied to pending suits), whereby, in case of an assignment of a policy, with consent of the company, an action may be brought by the party in interest, in the name of the assignor or the assignee,—in the present case, this plaintiff, alone, has all the equitable interest in the policy ; and, since Mower has no interest whatever, and has paid no premium for renewal, he cannot be considered a member of the company ;—and it was held, before the statute of 1869, that a suit upon a mutual insurance policy must be in the name of the party who was a member of the company at the time of the loss. *Blanchard* v. *Ins. Co.*, 33 N. H. 9 ; *Shepherd* v. *Ins. Co.*, 38 N. H. 239 ; *Folsom* v. *Ins. Co.*, 30 N. H. 240 ; *Flanagan* v. *Ins. Co.*, 1 Dutch. 506 ; *Brady* v. *Ins. Co.*, 11 Mich. 425.

Moreover, as we have already seen, the renewal of the insurance constituted a new contract, to which Mower was never a party ; and it is as much the subject of a suit as if it were entirely independent of the former insurance ; having reference to the former contract, only so far as to explain and define the terms and conditions of the latter, as being the same as in the former.

There was no misunderstanding between the contracting parties. The case find that Wood, the defendants' agent, when he received the new premium from the plaintiff and promised to re-insure the property, " knew fully that Pierce had bought and was the sole owner of the property, and that the policy had not been assigned."

And his knowledge and new promise or consent to the continuance of the policy for the benefit of the plaintiff must be considered to be that of the company, and the authority of the agent to make such contract must be presumed till the contrary be shown. *Goodall* v. *Ins. Co.*, 25 N. H. 169 ; *Sanders* v. *Ins. Co.*, 44 N. H. 244.

The receipt given by the agent, in which it is stated that the new premium was received from Mower & Pierce, is not binding and conclusive upon the plaintiff, who may show, by extrinsic evidence, that he is the only party from whom the money was received, and with whom the contract was made. 2 Parson's Cont. 67 ; *Hersom* v. *Henderson*, 23 N. H. 498 ; *Ryan* v. *Rand*, 26 N. H. 15.

But the defence to this suit rests mainly upon the interposition of the 9th condition, requiring the company's consent to an assignment

to be indorsed on the policy. This indorsement has not been made; and the company, which has received the full consideration for the insurance, claims, nevertheless, that, because of this informality, they shall incur no obligation to pay the loss which the plaintiff has sustained.

The court will be reluctant to encourage or give validity to such a defence. The plain recital of the facts deprives it of any claim to favorable consideration. The agent of the company knew that Mower had sold out his interest in the property insured to the present plaintiff. The plaintiff, informing him of all the facts, carried the policy to the agent and told him he wanted the mill re-insured. The agent told him he would have the property re-insured, but did not know what the premium would be for the next year; said he would get the policy, and the plaintiff might pay the amount due when he should receive it; and talked about a probable dividend which might reduce the amount of the premium to be paid for the new policy. The plaintiff paid him ten dollars, and the agent carried off the old policy, the plaintiff trusting him to insure him properly. Subsequently the agent met him on the street, told him he had got his insurance papers for him, and demanded five dollars more, which the plaintiff paid. The plaintiff, then, placing full confidence in the agent, incautiously put the defective papers away without looking at them, and never discovered their imperfections till after the destruction of the mill, but always supposed he held a new and valid policy.

The proofs of loss were made in due form and proper time. There is no claim by the defendants that there was over-insurance, nor any concealment of facts, nor any fraud or misrepresentation on the part of the plaintiff; nor that the full amount of premium for insurance has not been received.

It would seem to be a serious defect in our jurisprudence if courts of law could not provide a remedy for such a case, without turning a party over to the equity side of the court.

And we think that, under the circumstances of this case, a jury may find that the insurance company have waived their right to require an indorsement of the company's consent to the assignment upon the policy; and that they have made a new and valid contract of insurance with this plaintiff.

The condition upon which the defendants rely was inserted for their benefit, and the company had the right to waive it. If the defendants themselves, knowing all the facts, might do this, so might their agent. Every agent of such company is presumed by law, and may well be presumed by all persons innocently dealing with him, to possess every power necessary, or naturally incident, to his agency. This principle of law is essential, quite as much to the successful and profitable management of the insurance company, as for the protection of the community; for it is obvious that the business and profits of the former would be most essentially diminished, if, in case of every unessential departure, for convenience, from the usual requirements of the company's rules, resort were to be had to the directors and the home office.

An examination of the authorities shows us that the books are full of cases in which the doctrine now suggested has been applied.

Whether there *was* such a waiver of the condition in this case, is, of course, a question for the jury; and it will be for them to say whether an insurance company, systematically transacting and soliciting business at points remote from its primary location, may reasonably be presumed to have conferred upon a person held out to the world as " *the agent* of the Nashua Fire Insurance Company," authority to act for them to the extent of dispensing with a formality the waiver of which could do the company no harm so long as they received a full consideration for their contract.

And then, if they find he *had* authority, it will be for the jury to say whether the agent *has exercised* the power of waiving the requirements of the condition in this case; upon which question, evidence of his full knowledge of the sale to the plaintiff, of the absence and want of the written assignment, of his assurances to the plaintiff that such assignment would not be required, and of his reception of the full premium for re-insurance, would probably have quite a direct bearing. *Atlantic Ins. Co.* v. *Goodall*, 35 N. H. 328; *Barnes* v. *Ins. Co.*, 45 N. H. 24; *Boehen* v. *Ins. Co.*, 35 N. Y. 131; *Franklin Ins. Co.* v. *Updegraff*, 43 Pa. St. R. 350; *Wilson* v. *Ins. Co.*, 16 Barb. 513; *N. E. Fire and Marine Ins. Co.* v. *Schettler*, 38 Ill. 166; *Keenan* v. *Ins. Co.*, 13 Iowa 375; *North Berwick Co.* v. *N. E. F. and M. Ins. Co.*, 52 Me. 336; *Lightbody* v. *Ins. Co.*, 23 Wend. 18; *Nicoll* v. *Ins. Co.*, 3 Woodb. & M. 529; *Woodbury Savings Bank* v. *Ins. Co.*, 31 Conn. 518; *Carroll* v. *Ins. Co.*, 40 Barb. 292; *Conover* v. *Ins. Co.*, 3 Denio 254; Angell on Fire and Life Ins., § 217.

*Rathbone* v. *Ins. Co.*, 31 Conn. 194, was the case where a policy provided that the insurance should be void if articles denominated " hazardous " should be stored in the building without the consent of the company indorsed on the policy. The agent consented to the removal of the property insured to another building in which such hazardous articles were stored; and agreed to make whatever entry was necessary on the policy, to continue it in force, notwithstanding such storage; and took and retained the policy for that purpose. It was held that the agreement of the agent was a waiver, by the company, of the condition which required such written indorsement of consent, until such indorsement should be made.

Insurance companies are naturally more anxious to obtain premiums than to pay losses; but, in such a case as this, where there is no pretence of fraud or concealment, and where the company have received all the benefits of a mutual contract, contemplated and provided by their charter and by-laws, they should understand that the contract imposes mutual obligations. The defence is purely technical. " Such defences," says Roosevelt, J., in *Wilson* v. *Ins. Co.*, before cited, " where there has been perfect fair dealing on the part of the assured, in modern times, are not favored by either judges or jurors; nor are they in accordance with the true interests of the insurers themselves, or with the general sense of the community. That sense is usually com-

mon sense.   And it cannot be too often repeated, that common sense and common honesty are the true sources of common law."

The case is discharged; and the plaintiff may amend his declaration, without terms, in conformity with the foregoing suggestions.