HADLEY *v.* N. H. FIRE INSURANCE CO.

MARCH 11,
1875.

The plaintiff, interested as mortgagee, obtained the policy in suit in the name of the general owner, with his consent, paying the premium himself; and the policy being made payable to him in case of loss to the extent of his mortgage interest, the whole amount of insurance being less than his mortgage debt, it was *held* that he might maintain an action in his own name to recover the full amount.

Just before obtaining this policy, the plaintiff had two policies,—one in the Market Company, which company had stopped payment, and one in the North American Company. On receiving notice from the agent that the Market Company had stopped, he surrendered his policy to him to be cancelled, and received back the unexpired premium. The policy was returned by the agent to the company to be cancelled, and nothing more was heard from it. *Held,* that this policy must be considered to have been cancelled at the time it was so surrendered.

When the policy in suit was obtained, the agent of the defendant company knew all about the circumstances, undertook to procure the insurance, and do everything which was right. He afterward delivered the policy to the plaintiff, who, relying on the agent, accepted it and paid the premium. In an action on the policy, *held,* that the company was estopped to deny that the fact of the existence of the insurance in the North American Company had been endorsed upon the policy agreeably to the terms of one of the conditions in the same.

The N. A. Co. having shortly afterward failed, the plaintiff procured from the defendants' agent another policy,—in the Germania Co., of which he was also agent,—and placed the policy in suit in his hands. The agent knew all the circumstances of the various insurances, but did not cause the company's consent to the second insurance to be endorsed. *Held,* that these facts were evidence from which the jury might find that the defendants had waived the condition in the policy requiring their assent to such further insurance, and this, notwithstanding the defendant company had no other knowledge of these circumstances than the knowledge of the agent, which was held to be the knowledge of the company.

The defendants contending that the property was misdescribed in the application, but it appearing that the agent knew all the circumstances on which the description depended—*Held,* that the knowledge of the agent was the knowledge of the defendants, and that in the absence of collusion the company were bound by the agent's representation.

The plaintiff, having purchased a mortgage of the furniture and personal property in the house without the general owner's consent, took possession of the same, made preparations for selling it in the house, and

exhibited it to persons desirous of purchasing.  The court instructed the jury that if this were done in good faith and by an innocent mistake, the plaintiff would be protected by the provisions of Gen. Stats., ch. 157, sec. 2; but the court having also instructed them that the amount insured ought to have been diminished *as much as* the premium ought to have been increased on account of such increased risk, instead of in *the same proportion*—*Held*, that, whether the statute were rightly applied or not, this was erroneous.

The foreclosure of the plaintiff's mortgage having been effected after the fire and before the commencement of the action—*Held*, that this did not prevent the plaintiff from maintaining his action for the amount remaining due on his mortgage.

ASSUMPSIT, by William S. Hadley against the New Hampshire Fire Insurance Company, upon a policy of insurance.  It appeared that the plaintiff procured the insurance and paid the premium.  He testified that he procured the policy with 'the consent of Mr. Philbrick, the owner of the property insured, but the defendants claimed that the policy was procured without the knowledge or consent of said Philbrick.

It appeared that the house was insured for the benefit of the plaintiff in the Market Insurance Company for $4,000, and in the North American Insurance Company for $1,000, at the time of the great Chicago fire, in October, 1871.  A. F. Craig was the agent at Portsmouth of both of said companies.  Just before the date of the policy in suit, Mr. Craig, by the direction of the Market Company, notified the plaintiff that they had suspended, and if he wished to be protected he must get insured elsewhere.  The plaintiff immediately negotiated with J. M. Davis, agent of the defendant company at Portsmouth, and procured from him the policy in suit as a substitute for the Market policy, which, it was understood by the plaintiff and Davis, was to be cancelled.  At the time Davis issued the policy in suit, he had full knowledge of the facts as they existed in regard to the Market policy and the North American policy.  The Market policy was, on October 14, 1871, delivered by the plaintiff, Mr. Craig, for cancellation, who, about the last of October, 1871, returned it to the Market Company to be cancelled.  Whether this policy was ever actually cancelled at the office of the Market Company did not appear.  The unexpired premium was allowed by Mr. Craig to Mr. Philbrick, upon a claim he had against Philbrick.  At some time during the latter part of October, 1871, Mr. Craig, by direction of the North American Company, notified the plaintiff that that company also had suspended, and recommended him to get insured elsewhere ; and he immediately applied to Mr. Davis, informed him of this, at the same time leaving the policy in suit in Davis's hands, and procured from him a policy in the Germania Insurance Company for $1,000, as a substitute for the North American policy, which it was understood by the plaintiff and Davis was to be cancelled; but the plaintiff kept the North American policy in his

possession until after the property insured was destroyed by fire on January 10, 1872. He testified that at the time of procuring the Germania policy he intended to have the North American policy cancelled, but by accident neglected to attend to it, and that at the time of the fire he supposed it had been returned and cancelled. Mr. Craig also testified that at the time of the fire he supposed it had been returned to the North American Company and cancelled. The plaintiff testified that he had made no claim on the Market Company or the North American Company on account of the fire. It did not appear that Mr. Davis had any notice, at any time before the fire, that there had been any neglect to return the North American policy for cancellation, nor that the defendant company had any notice of the Market, the North American, or the Germania policy, except by reason of the knowledge which Mr. Davis had, as hereinbefore stated. No indorsement of either prior or subsequent insurance was ever made on the policy in suit. The plaintiff testified that he did not read the conditions in the policy in suit at any time previous to the fire, nor know that it contained such conditions. There was no evidence that Mr. Davis had any express authority from the company to waive any of the conditions or stipulations in the policy. The house insured was a large house, built for and occupied as a seaside hotel and boarding-house for summer business, with accommodations for from seventy-five to one hundred guests. The testimony of the defendants tended strongly to show that the risk would have been rejected as soon as it reached the office of the company if the property had been truly described, but it was not disputed that Mr. Davis had full knowledge of all the circumstances relating to its situation and occupancy. The property was in fact not occupied as a hotel or boarding-house during the continuance of the policy in suit. The defendants' secretary testified that he had the management of the company as to the character of the risks to be taken, and that he, a short time previous to said October 14, directed Davis not to insure any seaside hotels. The testimony of the secretary tended to show that the officers of the company, at the time this insurance was effected, understood the profits of seaside hotels and boarding-houses to be dependent on various contingencies, and that when unprofitable they were quite liable to burn after the season for boarding had passed, and while only occupied as dwelling-houses, and that the company for that reason considered the risk as great, and intended to require as high rates during the remainder of the year, as during the boarding season, and, as a general rule, did not intend to insure seaside hotels at any rate whatever.

The defendants claimed that Mr. Davis informed the plaintiff at the time the insurance was effected that he had no authority to insure seaside hotels in the defendant company, and that in fact there was a collusion between Davis and Hadley to misdescribe the house as a dwelling-house, in order to mislead the company and avoid a rejection of the risk, or procure it to be taken at a low rate. It appeared that the premium paid by the plaintiff upon the policy in suit was much

more than the ordinary rate of the defendant company for insuring dwelling-houses, though much less than the ordinary rate for insuring seaside hotels. It appeared that the interest of the plaintiff was by virtue of two mortgages of the insured property from Thomas H. Philbrick to him, one for $5,800, dated January 23, 1871, and the other for $235, dated January 28, 1871, and that the plaintiff took peaceable possession, for the purpose of foreclosure, on January 30, 1871, and immediately leased the property to Philbrick, who remained in possession as tenant of the plaintiff until the fire.

At the close of the plaintiff's testimony the defendants moved for a nonsuit, because it appeared in evidence that the policy was in Philbrick's name, payable to Hadley in case of loss to the extent of his claim as mortgagee, and when this suit was brought the mortgage had been foreclosed, and Hadley had no interest as mortgagee, but was the absolute owner; also, because by the express terms of the contract the policy is made void if the assured shall have or hereafter make any other insurance on the property hereby insured without consent of this company written on the policy. The court denied this motion, and the defendants excepted.

It was proved and not denied that after the delivery of the policy in suit to the plaintiff, he, without the consent or knowledge of Philbrick, the owner and occupant of the house insured, bought up a chattel mortgage on said Philbrick's household furniture, situated in said house, for between $700 and $800, and took an assignment of an insurance policy thereon for $2,000; and that ten or twelve days before the loss he took possession of said household furniture, held the same by a keeper until the fire, advertised it for sale at auction, allowed said furniture to be examined by strangers, and had the same packed in lots for sale;—all of which was without the consent or knowledge of the defendant company or their agents. There was no other evidence of any increase of the risk after the date of the policy.

The defendants asked the court to instruct the jury as follows: (1) That the Market policy for $4,000 and the North American policy for $1,000 were outstanding and subsisting, there being no evidence that they were surrendered to the companies, or that the premium or any portion of it had been returned to the assured; (2) that, there being no written consent upon the policy in suit to any prior or subsequent insurance, as required by the terms of the contract, and it appearing that there was both prior and subsequent insurance, the policy is void, and the plaintiff cannot recover; (3) that over-insurance, known to be so by the insured, and not known by the company, is of itself a fraud upon the company, and such a misrepresentation of a material fact that it avoids the policy; (4) that the stipulation in the contract, that prior and subsequent insurance should be assented to by the company by indorsement upon the policy, being designed to prevent over-insurance, could not be waived by an agent who had not been expressly authorized by the company to do so. The court did not give these instructions, and the defendants excepted.

The court instructed the jury as follows: (1) That the house not being occupied as a hotel in the winter season and during the term covered by the insurance, it is for the jury to say whether it was properly described in the policy as a dwelling-house; (2) that even if the house was misdescribed in the policy, yet if Davis, the agent, supposed that it could be so considered because unoccupied as a hotel during the term of the policy, or if he gave Hadley so to understand for the purpose of obtaining the premium, or for any other purpose, and there was no fraud on the part of Hadley, then this policy is good in this respect, although the company had no notice of the character of the house; and that if Davis or Hadley, without any fraudulent intent, mistook in this matter, the mistake is covered by our statute; (3) that the knowledge of the agent in this behalf was the knowledge of the company, and that if Davis knew the character of the house, this policy is valid in this respect, unless the jury find a fraudulent conspiracy between Hadley and Davis to deceive the company by misdescribing the property; (4) that the jury may consider the rate of premium paid, with the other circumstances in the case, as tending to show actual knowledge on the part of the company that this was not a common private dwelling-house; (5) that there is evidence in the case from which the jury may find that the company waived the stipulations in the policy that either prior or subsequent insurance should avoid it, unless the consent of the company thereto was written on the policy; (6) that neither the prior nor the subsequent insurance, nor both, would avoid the policy, if Davis knew of and consented to such prior and subsequent insurance, but, by reason of the knowledge and consent of Davis, the jury are authorized to find a waiver, on the part of the company, of the conditions in the policy in regard to double insurance; (7) that if Davis had notice of the prior and subsequent insurance, it was notice to the company; and if Davis had an opportunity to indorse such insurance on the policy, or to send it to the company for such indorsement, the jury are authorized to consider this a waiver on the part of the company; (8) that if the plaintiff relied upon Davis to make such indorsements upon his policy as were required, and he, having knowledge of the prior and subsequent policies, and an opportunity to make such indorsements or procure them to be made, neglected to make them or procure them to be made, the jury may consider this a waiver by the company of this requirement of a written indorsement; (9) that if Hadley did not know that it was necessary to have such written indorsement upon his policy, and was in no fault for not knowing it, and neglected for that reason to have it done, it was a mistake which is covered by our our statute; (10) that if the plaintiff, acting in good faith, and without any fraudulent purpose, by mistake and oversight neglected to return the North American policy to be cancelled, this does not avoid the policy in suit, although Mr. Davis supposed the North American policy was to be immediately cancelled, and had no knowledge, previous to the fire, that the plaintiff had neglected to have it cancelled; (11) that if the risk on the property insured was materially increased

by the act of the plaintiff in taking possession of the mortgaged personal property and making preparations to sell it, without the knowledge of the defendant company or its agent, before the fire, yet if the plaintiff acted in good faith, and without any intent to defraud or deceive the company, then this constitutes a mistake on the part of the plaintiff, which is covered by our statute, and does not avoid the policy, but the defendant is entitled to a reduction to the extent that an increased premium ought to have been paid in consequence of such increased risk; (12) that if the jury find that the risk was thus increased, and that the policy was not avoided on any other ground, they must determine how much increased premium ought to have been paid in consequence of such increased risk, and deduct that sum from the amount for which they find that the defendants would otherwise be liable. To the foregoing instructions the defendants excepted.

The court, among other instructions which were not excepted to, also gave to the jury the following: (1) That there was no evidence in the case which authorized them to find that the North American policy was cancelled previous to the fire, and therefore that it was a subsisting policy for $1,000 at the time of the fire, making, with the Germania policy for $1,000, other insurance to the amount of $2,000 on the house, and that if the defendant company is liable, it is liable only for thirty-eight forty-eighths of the value of the house and for the full value of the barn, not exceeding however the amount insured on each; (2) that if the jury are satisfied that Davis had no authority to make insurance on this house, and knew he had none, and concealed the fact from the company that it was a summer hotel, knowing that if the company had knowledge of this fact it would not take the risk, and are also satisfied that Hadley knew or had reason to know that Davis could not insure the property without violating his instructions, and that the company would not consent to insure it if it should be truly described, then the making of this policy was a fraud upon the company, and the acceptance of it on the part of Hadley made him a party to the fraud, and he cannot recover in this suit; (3) that if Davis, knowing he had no authority to insure this property, concealed the fact from the company that it was a summer hotel, in order to effect an insurance at less than hotel rates, and Hadley knew this purpose for which it was insured as a dwelling-house, then the act of Davis was a fraud upon the company, to which Hadley was a party, and he cannot recover; (4) that if the jury find that there was collusion between Hadley and the agent in effecting this insurance, and any fact material to the risk was concealed from the company by the agent, of which Hadley had knowledge, it was a fraud upon the company that avoids the policy.

The jury found a verdict for the plaintiff. The defendants moved for a new trial, and the questions arising on that motion were reserved.

*Frink* and *Hatch*, for the plaintiff.

*Briggs & Huse, Marston* and *Bulter*, for the defendants.

\*CUSHING, C. J.    The first question which arose at the trial was on the motion for a nonsuit.    The first reason assigned was the fact that after the fire the foreclosure of the mortgage had been completed, and therefore the plaintiff had no longer any interest as mortgagee.    It seems to me to be plain enough that the plaintiff's rights in this regard were fixed when the property was destroyed by fire.    I do not see how the foreclosure of the mortgage could in any way have operated to defeat the plaintiff's right to recover the amount which remained due on the mortgage.

It is true that by our law the foreclosure of the mortgage is *prima facie* payment of the mortgage debt, and if the objection had been made in this form it would have compelled the plaintiff to go forward, and, by showing the value of the property which remained after the fire, show the amount of his debt still remaining unpaid.    This being an objection which might have been removed by evidence if seasonably taken must be considered as waived, and this branch of the motion was rightly overruled.    The other branch was also rightly overruled, as will be shown hereafter.

The first instruction requested by the defendants, and the instructions actually given on the same subject, may be considered together.

The case shows that at the time of the making of the policy in suit it was not intended that the N. A. policy should be cancelled.    It was not until a fortnight after the making of this policy that the plaintiff got notice that the N. A. Co. had suspended, and, on taking out the Germania policy, agreed that the N. A. policy should be cancelled.    It would be difficult, I think, according to the ordinary rules of evidence, to prove an agreement to waive that condition previous to, or at the time of, making the policy with the condition in it; but I think that it was the duty of the agent to cause the proper endorsement to be made on the policy at the time it was issued, and he not having done so, and the plaintiff having paid his premium and taken his policy relying upon this, that the defendant company would be estopped from taking the objection; so that practically the result is the same, and there would be no reason to disturb the verdict for this cause.

If these views are correct, the portion of the charge numbered *ten* is, in this particular, immaterial.

So far, then, the instructions of the court to the jury were well enough, and the second branch of the motion for a nonsuit is also disposed of.

The evidence tended clearly to show that it was agreed that the Market policy was cancelled, and that it was cancelled.    The term *cancel* is, I think, often used as equivalent to *destroy*, or *put an end to*, and probably is not often understood by parties who use it as meaning the actual erasure of a writing, or the destruction of the paper on which it is written.    I cannot doubt, when the policy was surrendered to

---

\*SMITH, J., having been of counsel, did not sit.

the agent, and the unused premium restored to the insured for the purpose of putting an end to the policy, that an end was put to it, unless it should appear that the agent assuming to do this had not the necessary authority. All we know from the case is, that he returned the policy to the company, and that nothing more was heard of it. The request of the defendants on this point was rightly denied.

The instructions numbered five, six, seven, and eight—so far as related to subsequent insurance, on the authority of *Clark* v. *Ins. Co.*, 40 N. H. 333, *Barnes* v. *Ins. Co.*, 45 N. H. 23, 24, and *Pierce* v. *Ins. Co.*, 50 N. H. 297—were, as to the necessity of endorsing the existence of the Germania policy on the policy in suit, entirely correct. On the authority of *Marshall* v. *Ins. Co.*, 27 N. H. 164, and *Campbell* v. *Ins. Co.*, 37 N. H. 35, and secs. 2 and 3, ch. 157, Gen. Stats., I think that the instructions numbered one, two, three, and four were substantially correct, with this exception,—that in so far as section 2 is relied on to prevent the consequences of a mistake, inasmuch as the evidence tended strongly to show that if the character of the house and circumstances connected with it had been made known to the secretary of the company the premium would have been much larger, the jury should have been instructed that if they found the premium would have been larger were it not for this mistake, the amount of insurance should be proportionally diminished,—that is, as I understand, the amount insured should be reduced to such a sum as the amount of premium actually paid would purchase. For example: if there were an insurance of $1,000 at one per cent., which but for an innocent mistake in the application would have been two per cent., the insurance must be reduced from $1,000 to $500. I think this a material error in the charge.

As the case finds that the agent, Davis, had full knowledge of all the circumstances about the occupation of the house, and as the agent's knowledge is to be taken to be the defendants' knowledge, the instructions numbered three and four seem to be immaterial.

The instructions requested by the defendants, numbered two and three, have been sufficiently disposed of in considering the instructions actually given.

The case does not show that any evidence was offered tending to prove over-insurance, so that the requested instruction numbered four was uncalled for.

It is not necessary to determine whether the statute,—Gen. Stats., ch. 157, sec. 2,—was rightly applied in the instructions numbered eleven and twelve, as the instruction in regard to the deduction to be made in the amount insured appears to have been erroneous. The instruction was, that the jury should deduct the amount by which the premium ought to have been increased from the amount of insurance. If, for instance, the jury had found that the premium should have been increased one dollar, they would by this rule have deducted one dollar from the amount insured, whereas, in this case the amount of insurance should be reduced by 1-21 part, which would have been nearly $200, viz., $190.48.

It is suggested in the plaintiff's argument, that, as the verdict shows that the jury made no deduction, the mistake in the charge could have done no harm, but I am not satisfied that the result would have been such if the jury had been made to understand how largely the amount insured would have been reduced by a small increase in the amount of premium.

The defendants' counsel in his brief takes the position that the action cannot be maintained in the name of the present plaintiff, but I cannot find in the case any evidence that such position was taken at the trial, and it must therefore be considered as waived.

In the case of *Chamberlain* v. *Insurance Company, post,* decided at this (March) term, it is held in a similar case that the action was rightly brought.

For the error in instructions eleven and twelve, the verdict must be set aside.

LADD, J.   The instruction as to the deduction to be made in case the jury should think the risk was increased, was clearly and confessedly wrong, inasmuch as they were directed to deduct the amount they thought the premium ought to have been increased, instead of a sum proportionate to their estimate of the increase of the risk.   But it is said the verdict shows conclusively that this erroneous rule was not used by the jury in assessing the damages, because they gave the full amount of the policy ; that no deduction whatever being made, it is certain the rule was not applied ; and, therefore, the defendants were not prejudiced, and the verdict should not be set aside.   If we were dealing with a pure matter of mathematics, this would be so, undoubtedly.   But when we observe that the instruction, in its practical application, required the jury to deduct only one dollar where they should have deducted about two hundred, it seems to me impossible to say that the defendants were not prejudiced.   It is not difficult to suppose that a jury might consider one dollar or five dollars as too trifling a sum to be deducted from a verdict of four thousand dollars, when, had they understood the practical effect to be a deduction of two hundred or one thousand dollars, they might have regarded the matter in quite a different light.   Upon this ground I am of opinion that the verdict should be set aside, without inquiring whether the mistake, if there was one, comes within the scope and application of Gen. Stats., ch. 157, sec. 2, or not.

FOSTER, C. J., C. C.   I entirely concur in all the views expressed by my learned brethren, suggesting, as they have done, that it becomes unnecessary to consider the question of the applicability of ch. 157, sec. 1, Gen. Stats., to the present case; but, for a consideration of that matter, I refer to my opinion in *Chamberlain* v. *New Hampshire Fire Insurance Company, post.*

*Verdict set aside and a new trial granted.*