## JENNINGS *vs.* THE CHENANGO COUNTY MUTUAL INSURANCE COMPANY.

The rule which prevails upon sales of property, that a warranty does not extend to defects which are known to the purchaser, does not apply to warranties contained in contracts of insurance.

*Conditions of insurance* annexed to a fire policy and the written *application* of the assured when referred to in the policy *as forming part of it,* are parcel of the contract, and have the same effect as though written in the body of it.

Statements in the *application* where that is made part of the policy, of the purpose for which the property insured is to be occupied, and of its situation as to other buildings are warranties, and if untrue, the policy is void though the variance be not material to the risk.

And parol evidence that the insured truly informed the agent of the insurer who prepared the application as to these particulars is not admissible.

Where the *conditions* which were made a part of the policy declared that all applications for insurance must be in writing, and must state the relative situation of the property as to other buildings, *and the distance from each if less than ten rods,* and the printed application was so filled up as not to shew the distance of other buildings from the insured property, though there was one within ten rods ; *held,* that the insured could not recover.

So where the *conditions* required the application to state *for what purpose the insured property was occupied,* and in the application it was only called a *grist mill,* and it was proved that carpenter's work was accustomed to be done in it, with instruments and fixtures which were kept there ; *held,* that the policy was void.

ASSUMPSIT on a policy of insurance tried at the Cortland circuit, before MOSELEY, late C. Judge, in March, 1844. The plaintiff produced and proved a policy, dated June 25th, 1840, by which the defendants insured the sum of $1334 on the plaintiff's grist mill in Virgil, against loss or damage by fire, for five years. After the statement of the premium and of the premises insured, the policy proceeded thus : "Reference being had to the application of the said Harry Jennings for a more particular description, and the conditions annexed, as forming a part of this policy" &c. The paper annexed entitled "Conditions of insurance," contained the following clauses : "All applications for insurance must be made in writing, according to the printed forms prepared by the company. Such application shall con-

tain the place where the property is situated; of what materials it is composed; its dimensions, number of chimneys, fire places and stoves; how constructed and for what occupied; *its relative situation as to other buildings; distance from each if less than ten rods; for what purpose occupied,* and whether the property is incumbered, by what and to what amount, and if the applicant has a less estate than in fee, the nature of the estate." "If any person insuring any property in this company *shall make any misrepresentation or concealment in the application,* or if after the insurance is effected the risk of the property shall be increased by any means whatever within the control of the insured, or if the building or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring, and not specified in the said application, such insurance shall be void and of no effect." The plaintiff also produced the *application* for the insurance which was a printed blank form, signed by himself and by Jesse Pomeroy an agent of the defendants. Among other printed particulars contained in it was the following: "Relative situation as to other buildings, distance from each if less than ten rods, and for what purpose occupied and by whom." This was filled up in writing, as follows: "The mill is bounded by space on all sides."

The plaintiff proved by his miller that the mill was consumed by fire in April, 1841. On his cross-examination he testified that he took into the mill with the plaintiff's consent, when he took charge as miller, before the insurance was effected, a small hand turning lathe, which was kept in the upper story, and a work bench and some carpenter's tools which were placed in a lower room. He was accustomed to use these implements for doing small jobs and also for the purpose of making repairs to the mill. They remained there until the fire, and he had used the lathe for the purpose of turning a stick for a churn on the day preceding the night on which the fire broke out. The preliminary proofs were admitted to have been duly delivered, and the value of the mill was proved.

It appeared that the application was filled up by Pomeroy,

Jennings v. The Chenango County Mutual Insurance Company.

the defendants' agent, at the plaintiff's house, two or three miles from the mill. The plaintiff offered to prove that he informed Pomeroy at the time the application was prepared and signed of the fact that there was a turning lathe and work bench in the mill. To this the defendants' counsel objected, but the court overruled the objection and admitted the evidence. The defendants' counsel excepted, and the witness testified that such information was given to Pomeroy, and that the plaintiff urged him at the same time to go and see the mill; that Pomeroy replied that the existence of the lathe and work bench in the mill did not increase the risk, and that there was no use of putting them in the application. The defendants moved for a nonsuit, insisting that the policy was void, because the application did not state that the mill was occupied for other purposes than for a grist-mill, and that there was in that respect a concealment of material facts in the application. The motion was denied and the defendants excepted.

The defendants proved that there was a large barn standing within about six rods of the site of the mill at the time the insurance was effected, and which remained there at the time of the fire.

The plaintiff then proved, after an objection to the evidence by the defendants which was overruled, that at the time the application was filled up the plaintiff told Pomeroy that there was a barn within five or six rods of the mill, and that Pomeroy said there was no need of his going to see the mill or of putting the barn in the application. The defendants again excepted. Evidence was given upon other points not material to be stated.

The defendants contended and desired the judge to charge the jury that the policy was void, because the location of the barn was not mentioned in the application, though within ten rods of the mill, and because the plaintiff had allowed the mill to be occupied for other purposes than as a grist mill. The judge declined so to charge, but left the case to the jury upon the evidence, and the defendants' counsel excepted. The jury

found for the plaintiff the amount insured with interest.   The plaintiff now moves for a new trial on a bill of exceptions.

*D. Wright*, for the defendants.

*B. D. Noxon*, for the plaintiff.

*By the Court*, JEWETT, J.   The first question made on the argument was whether it was competent for the plaintiff to prove that at the time the application was made for this policy, the agent for the defendants was informed that there was a turning lathe and work bench in the mill.   On the trial such evidence was admitted, though objected to in behalf of the defendants. The ground of the objection is that the evidence offered was to contradict the written contract between the parties, and it is insisted that parol evidence for such purpose could not be admitted. On the other hand it is argued, that this is no contradiction of the terms of the contract, but only the same thing in effect as though it were proved that the agent examined the mill and saw the lathe and work bench, in which case it is contended that although the application fails correctly to represent for what the mill was occupied, yet that the warranty would not extend to such things which were obvious to the senses.   The contract between the parties is the policy, conditions and application, which are in writing.   (6 *Cowen*, 576 ;  6  *Wendell*, 488 ;  1 *Phil. on Ins.* 27 ;  13 *Wend.* 92;  *affirmed on error*, 16 *id.* 481.)   The application shows that the plaintiff applied for the insurance of a certain sum on his grist mill.   One of the conditions, which are part of the contract, requires the application to be in writing, and among other things to set forth for what the building was then occupied ; and another is that the insured in all cases will be bound by the application.

The counsel for the plaintiff to sustain his proposition, referred to several authorities relating to the effect of a warranty of soundness or against defects made on the sale of property.   The proposition that a general warranty on the sale of property, does not extend to defects which are obvious to the senses, is un-

douotedly correct, even when the contract is in writing. In *Schuyler* v. *Russ*, (2 *Caines*, 202,) the action was upon a written warranty of soundness, and this court held that parol evidence was admissible to show that at the time of the sale the vendor informed the vendee of the defect in question, and also that it was clearly visible. The court cited *Finch's Law*, 189; 1 *Salk.* 211; to which may be added *Long on Sales*, 2d ed. 202, *and the cases there cited.* Although it may be difficult to assign a satisfactory reason for a distinction in this respect between a warranty in a policy of insurance and one upon a sale of property, there are yet many adjudged cases sustaining the principle, that where the policy on its face is clear and explicit, no parol evidence *aliunde* can be admitted, to contradict, control, restrain or extend it. (*Vandervoort* v. *The Columbian Insurance Co.*, 2 *Caines*, 155; *Cheriot* v. *Barker*, 2 *John.* 346.) In *Higginson* v. *Dall*, (13 *Mass. R.* 96,) Ch. J. Parker, in giving the opinion of the court said, that "policies, though not under seal, have nevertheless ever been deemed instruments of a solemn nature and subject to most of the rules of evidence which govern in the case of specialties. The policy is itself considered to be the contract between the parties, and whatever proposals are made or conversations had, prior to the subscription, they are to be considered as waived, if not inserted in the policy or contained in a memorandum annexed to it."

Nor are words spoken by the parties at the time of signing the policy to be taken as a part of the contract; as where the underwriter, at the time of signing, said he would not be held if the vessel did not sail by a certain day. The court said, " The declaration of the underwriter, that unless the vessel should sail by a certain day he would not be bound, should have made a part of the written contract, if he intended to avail himself of it. Parol evidence is not sufficient to give it effect." (*Whitney* v. *Haven,* 13 *Mass. R.* 172.) In *Weston* v. *Emes,* (1 *Taunt.* 115,) it was decided that parol evidence of what passed at the time of effecting an insurance was not admissible to restrain the effect of a policy. In *Atherton* v. *Brown,* (14 *Mass. R.* 152,) where property was insured " on board the Spanish brig New Constitution," the

vessel was captured and with her cargo was condemned as American property; it was held that the description in the policy amounted to a warranty that the vessel was Spanish, and that it was not competent for the assured to show that the underwriters were informed, at the time of their subscription, that she was in truth an American vessel, and was to be ostensibly Spanish for the purpose of avoiding capture by the enemy. "Parol evidence of what was within the knowledge of the underwriters was not admissible." In *Parks* v. *General Int. Insurance Co.*, (5 *Pick.* 34,) the court said: "Generally, no doubt, the terms of the policy are to be taken as the evidence of the contract; and if they are explicit, all proposals made, or conversations had, before the subscription, inconsistent therewith, are to be considered as waived, according to a well known rule of construction of written contracts." In *Wiggin* v. *Boardman*, (14 *Mass. R.* 12,) Parker, Ch. J. said, that "no instance can be found, where the knowledge of the underwriter that a deviation was intended, has been set up in excuse for such deviation, or to avoid the effects of it. Such a fact could only be proved by evidence extrinsic to the policy, and in fact contradictory to the terms of it: so that by the rules of evidence, which are said to apply as strictly to these contracts as to deeds, no such fact could be inquired into. If the insured means to protect himself in any adventure, which does not fall within the usual province of a policy, or within the known usage of the voyage he insures, he should insist upon a stipulation which will accommodate his views; and not trust to evidence which the law will not allow to vary the bargain, which is proved by the writing."

In *Flinn* v. *Tobin*, (1 *Mood. & Malk.* 367,) Lord Tenterden, Ch. J. said that "the contract between the parties is the policy, which is in writing, and cannot be varied by parol. No defence therefore which turns on showing that the contract was different from that contained in the policy, can be admitted: and this is the effect of any defence turning on the mere fact of misrepresentation without fraud."

One essential difference between a representation and a warranty is, that the former is of some matter out of and collateral

to the contract and making no part of it, while the latter is of some matter appearing on its face.    Evidence of a representation is never received to explain the intention of the parties to the contract, but merely for the purpose of establishing a fraud. (*Vandervoort* v. *Smith, already referred to.*)    In *De Hahn* v. *Hartley,* (1 *T. R.* 343,) Lord Mansfield, Ch. J. said, "There is a material distinction between a warranty and a representation. A representation may be equitably and substantially answered; but a warranty must be strictly complied with."    "A warranty in a policy of insurance is a condition or a contingency, and unless that be performed there is no contract.    It is perfectly immaterial for what purpose a warranty is introduced; but being inserted, the contract does not exist unless it be literally complied with."    Ashhurst, J. said, "The very meaning of a warranty is to preclude all questions whether it has been substantially complied with : it must be literally so."    See also *The Farmers' Ins. and Loan Co.* v. *Snyder,* (16 *Wend.* 481.)    And it is a matter of no moment whether the warranty is material or not as regards the risk; it must be complied with before the assured can sustain an action against the underwriters.  (*The Jefferson Ins. Co.* v. *Cotheal,* 7 *Wend.* 72.)

A false warranty will vitiate the policy though the loss happens in a mode not affected by the falsity. (*Woolmer* v. *Muilman,* 1 *W. Black.* 427 ; 3 *Burr.* 1419.)    Not so as to a representation.    To avoid the policy it must be false or mistaken in a matter material to the risk ; and that is a question for the jury.    (*The Farmers' Ins. and Loan Co.* v. *Snyder,* 16 *Wend.* 481, *in error.*)    "The rule that the express provisions of the policy cannot be varied by proof of any representation is applicable to *fire policies* as well as marine ones." (*N. Y. Gas Light Co.* v. *Mechanics' Fire Insurance Co.,* 2 *Hall's Rep.* 108 ; 1 *Phillips on Insurance,* 284.)    "And a *condition* in a fire, no less than a marine policy, not complied with, defeats the policy, whether it be material to the risk or not, and whether the non-compliance be with or without the act or privity of the assured." (1 *Phillips on Insurance,* 410, *ch.* 9, § 10; *Duncan*

v. *Sun Fire Ins. Co.*, 6 *Wend.* 488; *Fowler* v. *Ætna Ins. Co.*, 7 *id.* 270.)

The question then recurs, do the application and conditions annexed to the policy in this case make part of it ? for if not, then without doubt the plaintiff under the evidence was clearly entitled to recover. If the application is to be regarded merely as a representation, there is no evidence that it was either false or inaccurate in a matter material to the risk.

I take it to be an admitted principle in the law of insurance as well as in the law operating upon other contracts, that separate papers may, by express stipulation, be made part of the contracts. (13 *Wend.* 92.) The policy in question recites that Harvey Jennings (the plaintiff) was a member of the Chenango Mutual Insurance Company, and bound and obliged himself, &c. and also secured the company the sum of $200,10, the amount of the deposite or premium for insuring the sum of $1334 unto him on the following property, viz. $1334 on his grist mill. *Reference being had to the application of said Harvey Jennings for a more particular description, and the conditions annexed, as forming a part of this policy.* This stipulation, it seems to me, makes the conditions annexed to it and the application as much a part of the policy as if they had been written on its face ; and such facts therefore as are stated in the application must be regarded as having all the effect which an express warranty inserted in the body of the policy would have.

If I am not mistaken in this, I think it would be difficult for any one to see any legal reason why the principle that the non-compliance with an express warranty on the part of the assured avoids the policy should not be applied in all its strictness in this case. The warranty then not having been strictly complied with, there is no contract. One of the conditions is that the application shall state where the property is situated and *for what occupied ; its relative situation as to other buildings ; distance from each, if less than ten rods ; for what purpose occupied,* &c. Another condition is, that such applications may be made either by the applicant or by a surveyor ; and that in *all cases the insured will be bound by the application.* A still further condi

Jennings *v.* The Chenango County Mutual Insurance Company.

tion declares that if any person insuring any property in this company shall make any *misrepresentation* or *concealment* in the application; or if after the insurance is effected the risk of the property shall be increased, &c. such insurance shall be void and of no effect. The application represents the building insured as a " *grist mill*" without any other designation of the purpose for which it is occupied; and its relative situation as to other buildings is thus stated: " This mill is bounded by space on all sides."

I do not think the representation as to the purpose for which the mill was occupied is falsified by the fact that a work bench and tools were kept in the mill for the purpose of keeping *it in repair.* I have no doubt but that the plaintiff might, without incurring the danger of forfeiting his policy, place in the mill suitable materials and tools to make and keep up the ordinary repairs of the building. (*Dobson* v. *Sotheby,* 1 *Mood. & Malk.* 90.) But here other mechanical operations were carried on by the turning lathe and work bench than to repair the mill.

As it respects the location of the mill in reference to other buildings, the application contained a clear misrepresentation, which I think renders the policy void upon the well settled principles to which I have adverted. At the same time it cannot be denied but that their application to this case operates with great severity upon the plaintiff, and is well calculated to lead to a serious doubt, whether the intentions of the parties and the interests of justice were duly regarded in the establishment of the rule that matters of mere description should, in this class of contracts, be considered an express warranty, without regard to their materiality in respect to the risk. Here the mistake is proved to have been the consequence either of the ignorance, carelessness or bad faith of the agent of the defendants. He filled up a printed blank application furnished by the defendants to be subscribed by the plaintiff, who probably neither had or pretended to have any information or knowledge of what such paper ought to contain in order to render the policy

available, but relied in that respect implicitly upon the agent sent out by the defendants.

Having, however, come to the conclusion that the law of the case is as above stated, I am bound to say that the decision of the learned circuit judge was erroneous, and that a new trial must be had upon that point. It is unnecessary therefore to examine the other points in the case. The costs must abide the event.

New trial granted.