McFarland, J.,
delivered the opinion of the Court.
Mary A. Booker brought this action, in the Circuit Court at Memphis, upon a policy of insurance for ten thousand, dollars, (|10,000), issued hy the Southern Life Insurance Company upon the life of her husband, Edmund J. Booker, who died the 20th of September, 1867. The policy was read in evidence and is admitted to have been executed in due form by the Company.
There was a verdict and judgment for the plaintiff below: and, upon the refusal of the Court to grant a new trial, the defendant appealed in error.
The defense rests upon several distinct grounds:
1st. That the policy was never in fact delivered, so as to become ' binding upon the Company. The facts, upon which the questions arise, are: That about the first of. October, 1866, Edmund J. Booker, then in business in New Orleans, made the application for assurance through one Smith hurst, the agent of the Company for the State of Louisiana; the application was forwarded to the home office in Memphis, Tennessee. The policy was made out and duly executed by the proper officer, dated the 5th of October, 1866, and forwarded to Smithburst at New Orleans. The terms of the contract were, the payment in cash of three-fifths of the first annual premium, to-wit: $237.60. *609 and the interest in advance on the other two-fifths of the premium, and, the execution of a note for the other two'-fifths, to-wit: $158.40 due at twelve months,, and a like annual premium. The policy, upon its face,, acknowledges the payment of the cash part of the premium by Mary A. Booker, — for whose sole use it was issued, — and the execution of the note for the balance.
It appears that it was the duty of the agents, and they were so instructed, to deliver policies only upon the actual payment of the cash part of the premium. In this case, however, Smithhurst delivered the policy without the cash payment, accepting the note of Edmund J. Booker for the amount. Soon after, Smith-hurst was succeeded as agent, by Hatch & Smith,, who jointly represented the Company in Louisiana.. They found that this policy had been delivered without the payment of the cash part of the premium. Thereupon, a draft for the amount was drawn by the agent,. Smith, payable to the order of the Company, at sixty days, dated the 23rd of October, 1866, and accepted by Booker. This was not paid at maturity — but was-afterwards, on the 7th of January, 1867, surrendered and a note taken from Booker, payable to the Company on the 25th of January, 1867, for the amount of the draft, less $25, claimed by Booker to have been loaned to Smithhurst. This note was taken by the authority of the Company, and provides that it shall bear eight per cent, interest, after maturity, until paid. This note was not paid: it is proven by the agents that frequent demands were made for its payment, but *610 Booker expressed his inability to pay. After June or July no further demands were made, and Booker dying •on the 20th of September, no part of the sum was •ever paid.
Upon the issuance of the policy, the defendant applied for and obtained a re-insurance of $5,000 upon the life of Booker in the ACtna Life Insurance Company — and, upon being notified of Booker’s death, gave notice of his death to the latter Company.
The written application for assurance made out and •signed by the plaintiff and said Edmund J. Booker, and shown to be a part of the contract, contains this provision: “ That the policy hereby applied for shall not be binding upon the Company until the amount of the premium as stated therein shall have been received by said Company, or some authorized agent thereof, during' the lifetime of the person therein •assured.”
Upon these facts it is argued for the Company, that the contract was never completed, and that the Company never became bound thereby; that the agent, Smithhurst, was only authorized to deliver the policy upon the payment of the cash part of the premium— and if actually delivered, it could not bind the Company : 1st, because the agent had no authority to deliver it without the payment of the cash part of the premium; and, 2d, because by the express terms of the contract, it could only take effect upon the pay-, ment of the premium in the lifetime of the assured. And here the question arises, Did Smithhurste, the agent, have the authority to waive that part of the *611 stipulation, requiring the cash part of the premium to be paid in hand, and accept a note or other security for the same, and bind the Company by an unconditional delivery of the policy, without this pre-requisite ? In Bohen v. The Williamsburg Insurance Co., 35 New York Court of Appeals, the question was as to the effect of a certificate of renewal of a fire policy delivered without the payment of the' premium. The policy contained a condition: “That no insurance, whether original or continued, shall be considered as binding until the actual payment of the premium.” The certificate of renewal was delivered without anything being said as to the payment of the premium. It was held that the agent, being a general agent, had the authority to waive the cash payment. The Court said: “This clause in policies of insurance has been before the Court in several cases and has received a judicial construction which leaves no room to question the authority of a general agent to make a valid insurance without exacting pre-payment of the premium.”
A similar doctrine was held in the case of The Trustees of the Baptist Church v. Brooklin Fire Insurance Company, 19 New York Court of Appeals. This was a cause where there was a verbal agreement that the policy should be renewed, from year to year, and the premium paid on demand. The policy contained a provision that it should not be considered binding until the actual payment of the money. In that case the Court, among other things, said: “A provision in a policy already executed and delivered so as to bind the Company, declaratory of a condition that premi- *612 urns must be paid in advance, manifestly has no effect, except to impart convenient information to persons who may wish to be insured." To the same effect is the case of Goit v. The National Protection Insurance Company, 25 Barb., in which case the Court said: “ Hence it was the privilege of the insurers in this case to waive the condition making the actual payment of the premium' a condition precedent to the binding efficacy of any insurance, as it was a provision inserted for their benefit, and in which they alone were interested.”
The case of Sheldon v. The Connecticut Mutual Life Insurance Company, in the Supreme Court of Connecticut, reported in 1 Bigelow Insurance Reports, 27, is a case still stronger. In that case the declaration or application for a policy, which was a life policy, contained a proviso very similar to the one in the present (¡ase. When solicited by the agent to apply for a policy, the applicant expressed his inability to pay the cash part of the premium; the agent then agreed to provide the cash part of the premium himself, and told the applicant he might at some convenient time make his note payable to the Company, and pay the other half to the agent. Upon this the application was made, the policy issued and sent to the agent, who countersigned it, but retained it in his possession, and upon the death of the party returned it to the Company. A judgment in favor of the insured, upon these facts, was affirmed. 1 Bigelow, 51; Baber v. Union Life Insurance Company, in the Superior Court of New York, Id., 595.
*613 These authorities, we think, are founded in reason and sound principle. The agent, it is admitted, is authorized to receive the payment and deliver the policy. Being a general agent, without, special instructions limiting his power, he has the power to determine for himself what he is willing to accept as a payment of the cash premium — when the cash is actually paid to him, the Company can only look to him for it — if he chooses to receive something else than cash, it is probable that as between him and his principal, the latter would have the right to treat it as a cash payment to him and hold him responsible accordingly — so that the Company would have, if they chose to exercise it, the same right they had before, and the agent only would be the loser.
Therefore we hold, that Smithhurste, if he was a •general agent of the Company, had the right to waive the payment of the cash part of the premium and •deliver the policy: and, if he did so, absolutely and unconditionally, — in the absence of fraud, — the delivery would be binding upon the Company.
As to the question, whether Smithhurst was a gen-' eral agent or not, we are of opinion that, if he had entire or general charge of the business of the Company for the State of Louisiana, acting under the general instructions to such agents, and without special instructions limiting his authority, — he was a s general agent, in the sense of the authorities above recited, although his authority was limited to a single State. If he had, under general instructions, authority •to deliver the policy and receive the premium, without *614 special directions as to the exercise of the power, then for this purpose he was a general agent. This was in substance the charge of the Court below, and the proof shows such to have been the facts.
Again: If Smithhurst was the general agent of the Company, and as such waived the payment of the cash part of the premium, and delivered the policy to take effect absolutely and unconditionally, — in the absence of fraud, — we hold that the contract can not be avoided by that provision in the application for the policy before referred to, to-wit: “That the policy hereby applied for shall not be binding upon the Company until the amount of the premium as stated therein shall have been received by said Company, or some authorized agent thereof, during the lifetime of the person therein assured.” For the reason, as we have seen, that the agent having the power to waive this cash payment, it must be taken, for the purposes of this question, that the payment has been in fact made.. The note or promise of the party has been accepted as cash and must be so regarded. It will be observed that this has no application to the question, Whether the policy could be avoided by reason of a failure to pay the premium note, or any subsequent premium: — this, to some extent, stands upon a different ground.
The argument for the defendant — and it has much force and plausibility — is, that the written contract upon, its face, (that is the application which is a part of the policy), shows in express terms, that the policy is not to be binding until the money is actually paid— *615 and that this written stipulation remains in force after the delivery, and can not be varied by parol proof. It is apparent that the existence of this stipulation is inconsistent with the delivery in the legal sense of the policy; for if it is not to take effect, it can not be considered as delivered. The policy dated and delivered at one date, but not to take effect until the payment of the money at a subsequent date, is inconsistent with other parts of the contract. This policy was dated the 5th of October, 1866 — it was delivered in consideration. of an annual premium, dating from that day. Assume, for argument, that the policy was not to take effect until the payment of the money, and in fact the money was not actually paid until the 5th of September, 1867 — then, although the premium for an entire year is paid, the party is only actually insured for one month.
The more reasonable view, therefore,, is, that when the policy has been in fact delivered, unconditionally and without fraud, it must be taken that this stipulation has been complied with, either by the actual payment of the money, or by some means that the insurer is willing to accept as a compliance with this stipulation. And furthermore, while the application contains the stipulation that the policy is not to take effect until the money is actually paid — on the. other hand — the policy upon its face shows an acknowledgment of the receipt of the money. The one statement may as well be varied by parol as the other.
It has been held in a number of cases, that where the policy has been delivered unconditionally and with *616 -out fraud, acknowledging upon its face the payment of the premium, the Company áre estopped to deny the payment as a ground of forfeiture : but may show the fact, in order to collect the same, or deduct it from the amount of the policy sought to be recovered. 20 Barb., 468; 25 Barb., 189; Philips on Insurance, Sec. 514.
The Court below held in substantial accordance with these views.
If doubts existed as to the authority of the agent, Smithhurst, to waive the payment of the premium, it is insisted by the counsel for Mrs. Booker, that the jury were justified in finding that the Company had fully ratified the act of Smithhurst, by accepting first the draft, and afterwards the note, of Booker for the premium, and also by taking out in another Company a re-insurance, upon the life of Booker. For the Company it is argued that they offered legal evidence to prove that the acceptance of the draft from Booker was upon the express condition that the contract was to be void and of no effect until the money was paid; and further, that in reality, upon the delivery of the policy in the first instance, it was delivered upon the •condition that it was not to take effect until the premium was actually paid.
We are of opinion that if the policy was delivered in the first instance, upon the agreement and condition before mentioned, and this condition was not afterwards waived by the act of the Company, then the contract would not fake effect until the condition was complied with by the payment of the money. *617 Goit v. Nat. Ins. Co., 25 Barb., 190. Therefore, it was an important and vital question, upon the trial of the cause, To determine whether or not Smithhurst, did waive the payment of the cash part of the premium, and deliver the policy absolutely, Or did he deliver it upon the contract and agreement with said Booker, that it was not- to take effect until the premium was actually paid, And was this condition also annexed to the subsequent acceptance of the draft and the note? Evidence bearing upon this question was vital and material to the cause, both upon the question as to whether there was an absolute delivery in the first instance; and also, how far these acts are to be regarded as a ratification by the Company of the previous acts of its .agents.
We come then to consider the evidence, which it is insisted was offered on this question and improperly rejected.
The defendant proposed to prove various statements made by Booker, after the delivery of the policy, in which he admitted that he was not insured, and that he carried his own risk until the premium was paid, and said he wo\ild get that policy from his wife and deliver it up. They also proposed to prove his statements as to the conversation between himself and Smithhurst, at the time the policy was delivered to him. They also proposed to prove, that at the time the draft for the premium, taken by Smith & Hatch, was delivered, it was accepted upon the express agreement, that unless the same was paid at maturity the policy was to be void. They also proposed to *618 prove that by an agreement between Booker and Smith & Hatch, after the delivery of the policy, the matter of insurance was abandoned — all this was excluded •upon the plaintiff’s objection.
There is much force in the argument, that the husband, in procuring a policy upon his own life for the benefit o f his wife, is the reaí party — that the wife is in reality not known. Yet, it is in the form of a contract with the wife in her own name, for her own benefit, and the husband, in procuring the contract, is treated as her agent — in this respect she is allowed to act as a feme sole, and the benefit of the contract becomes her separate right, in this case, by the express provisions of the defendant’s charter. Then we treat Booker as having acted as the plaintiff’s agent.' The rule upon which the declarations of an agent are admissible against his principal is familiar. They must be declarations accompanying the act, or as part and explanatory of it. In the first transaction, upon the delivery and acceptance of the policy, Booker acted as the agent of the plaintiff, and all that was said by him as explanatory of the transaction, and to show the real agreement between him and Smithhurst, was certainly competent evidence. But how shall this be proven ? Can it be proven by showing what Booker afterwards admitted that he had said and done upon that occasion? This direct question arose in the case of The Fraternal Mutual Life Insurance Co. v. Applegate, before the Supreme Court of Ohio. In that case a plea was offered, that the husband had surrendered the policy, which was upon his own life *619 and for the benefit of bis wife, for one of a less amount in favor of his representatives, and proof was offered, of declarations of the husband made after the issuance of the policy, going to show as a reason for this change that the statements in his declaration as-to his health, upon which the policy issued, were untrue. Upon this the Court said: “These provisions,”' (referring to the statutes of Ohio), “treat a married woman as a feme sole in respect to policies of insurance taken out in her name upon the life of her husband — such policies become her separate property, and are placed beyond the reach of her husband or his creditors.” The husband “had, therefore, no legal right to control the property, and the unauthorized surrender of it by him constitutes no bar to the action.” The Court said there was nothing to show that in surrendering the policy, the husband was the-agent of his wife — his declarations, therefore, as to his health, were those of a stranger, and not on any ground admissible against the wife. 7 Ohio State Rep., 292; Bliss on Insurance, 596; 2 Philips on Insurance, 626. The same reasoning is maintained in Baber v. Union Life Ins. Co., from the Superior Court of New York, 1 Bigelow, 595.
The charter of the defendant places the rights of married women, in cases of this character, upon the-footing which the Court of Ohio, in the cases referred to, assumes they had under the statutes of that State.
Upon this principle, the declarations or admissions of Booker, made after the delivery of the policy, as-to what had occurred at the making of the original *620 contract; and also, the offer to prove that Booker bad subsequently agi’eed to surrender and abandon the policy of his wife, were properly rejected. The statements of Booker to the effect that “he did not consider himself insured,” were properly rejected, upon the further ground, that they were but the expressions of an opinion as to the legal rights of the parties, rather than the statement of. a fact.
As to the proof offered, that at the time the draft •of Booker was accepted for the premium, there was an agreement that if the draft was not paid at maturity the policy was to be void — it may be said that in this transaction Booker was the agent of the plaintiff, and what he said at the time, was admissible as explanatory of the transaction. It may be doubted, whether, in accepting this draft, Booker was the agent of the plaintiff, upon the assumption that the note of Booker had been accepted in the first instance by the Company; then the payment of this note, by draft or otherwise, was a matter between Booker and the Company. But assuming that in accepting this draft, Booker was acting as the plaintiff’s agent — while any statement then made by him was admissible as explanatory of that act, yet it could not be admitted to prove that he then made an agreement, which might result in the surrender and abandonment of the plaintiff’s policy, unless it be shown that he had authority to make such an agreement. This is upon the assumption that the original delivery of the policy was Unconditional. If the delivery of the policy was conditional, and its validity made to depend . upon the *621 payment of the money, then it would have been proper' to show, the terms upon which the draft was accepted, in order to show whether or not the condition annexed tó the delivery, (that is the payment of the money), was waived by the acceptance of the draft. It will be further observed, that the importance of this is greatly lessened by the fact, that if this was the condition upon which the draft was made, the jury were well justified in finding that it was not insisted upon, but waived by the acceptance of a note made afterwards and payable on the 25th day of January. There was no offer to prove that the note was accepted upon the condition of its payment at maturity, — on the contrary, — the note shows that it was to bear eight per cent, interest after maturity, and its-payment was demanded several times after its maturity; from which it would seem that it was to be operative after maturity, — this note appears never to have been surrendered. The jury were instructed that the acceptance of the note by the Company, and other acts indicating a ratification, might be considered upon this question.
The Court, instructed the jury in substance, that if the agent delivered the policy in the first instance without authority, yet if the delivery was afterwards ratified by the Company, it would be binding; and that they might look to the fact, whether or not the Company were in the habit of waiving the cash payment in other cases; or that the Company, knowing that the policy was delivered without authority, acquiesced therein; or that they published a list *622 of policy holders, including this policy; or that they took re-insurance upon the life of Booker in another Company — all these things, if proven, were competent circumstances to be considered in determining whether the delivery had been ratified or not. It is urged as an objection to this, that the Judge summed up, and directed the attention . of the jury to the facts upon one side of this question, and did not direct their attention to the facts upon the other side; and the case of James & Simpkins v. Drake, 3 Sneed, 340, is relied upon. The facts of that case were peculiar, .and the injustice of the charge, in the manner indicated, was glaring.
In this case, however, it was proper for the Circuit Judge to instruct the jury as to what was necessary to constitute a ratification. He might even, we think, have gone farther than he did, and might have told the jury that certain acts, if proven, would, of themselves, amount to a ratification. Evans v. Buckner, 1 Heis., 291. It might be a question worthy of consideration, whether the act of re-insurance in another Company, and giving notice of the death of Booker, was not a full admission of an interest in Booker’s life, without which they could not insure. Bliss on Insurance, 9.
What the facts are upon the other side of the question, that the Judge should have pointed out to the jury, we do not perceive. There were perhaps other circumstances bearing xipon this question, and in defendant’s favor; but we are of opinion that there is not in this any error for which we should reverse.
*623 This brings us to the consideration of the other grounds of defense. The written application upon which the policy issued, and which was signed by the plaintiff and Edmund J. Booker, in its conclusion •contains the following: — “ It is hereby declared that the above are fair and true answers to the foregoing questions, and it is agreed by the undersigned that the above statements shall form the basis of the contract for assurance, and also that any untrue or fraudulent answers, or any suppression of facts in regard to the above named party’s health, will render the policy null and void and forfeit all payments made thereon.” Preceding this, are various questions and answers, and it is argued that the proof shows that some of these answers were untrue, and therefore the policy is void, by the express terms of the contract. 1st, It is stated that the residence of said Booker was in New Orleans, Parish of Orleans, La.; whereas the proof shows that his residence was at the time in Jefferson, a city or town contiguous to New Orleans— .his place of business being in New Orleans. 2d. It is stated that the occupation of said Booker was that of merchant and steamboat agent; whereas the proof shows that he was steamboat agent, but does not show that he was a merchant. 3d. The birthplace of said, Booker is stated to be Ottaway county, "Virginia; whereas, there appears to be no such county as Ottaway in the State of Virginia, but a Nottaway county. 4th, This question appears in the application; “ Have you ever been or are you now employed in any Governmental military or naval service, if so, how *624 long- and in what?” — to which the answer is, “Volunteer in C. S. A. four years” — it is urged that the proof shows he was not in the Confederate States army, at most, more than one year.
It is urged that these answers are false and fraudulent, and avoid the policy. The construction of the language above quoted from the written application, has been questioned. We agree with the defendant’s counsel that the language means, “that any untrue or fraudulent answers,” referring to the answers previously given and set forth in the application, “or any suppression of facts in regard to the above-named party’s health — the latter provision being in general terms — shall avoid the policy; and that the untrue and fraudulent answers need not necessarily be in regard to the party’s health.” It is obvious that there might be untrue and fraudulent answers, not directly in regard to the party’s health, and yet seriously affecting the risk.
The question, however, as to what shall constitute untrue and fraudulent answers in the true and fair meaning of the contract, is the question of doubt and difficulty. According to the authorities, the question seems to turn upon the distinction between those statements made by the assured in the application or policy which are held to be warranties, and those which are regarded merely as representations. As to the former, it seems to be generally held that they must be strictly true, whether material or not. Bliss on Insurance, 34, 35; Anderson v. Fitzgerald, 4 House of Lords, 2 Denio, 75. As to the latter, it must appear that *625 they were made with a fraudulent intent, or that the fact or circumstance stated was material to the risk.. Bliss on Insurance, Sec. 36, and following, and various authorities there cited.
Great uncertainty seems to exist as to what shall be . deemed warranties, and what representations; and it appears to be very difficult in some instances to place the distinction upon any very sound basis. It does not follow, because they are inserted in the application or policy, that they are warranties. It is said their character will depend upon the form of expression used, the apparent purpose of the insertion, and sometimes upon the connection or relation to the other parts of the instrument. Bliss on Ins., s. 43, et seq.
Upon this question the authorities are in apparent, if not real, conflict. It has been said that either view of the case might be well sustained by authority. The question is manifestly one of great importance and comparatively new in the courts of this State. The number of persons, who resort to this means of investment for their families, makes it important that their rights and duties should be defined and understood. The contract is one which imposes upon the-insurer an obligation of an unusual character, and the performance of it sometimes becomes very onerous;, and it is proper that they should be guarded against fraud and imposition, and that the utmost good faith should be required of those at whose instance they undertake these obligations. On the other hand, they should not be allowed to insert, as parts of the con*tract, terms and stipulations of matters wholly unim *626 portant and immaterial to its substance, and use them as mere traps to delude the unsuspecting, and elude the just responsibility of their undertaking; for it will be observed, that by the terms of the contract, false or untrue answers or statements of the applicants, avoids not only the policy, but forfeits all payments made thereon.
It would seem to be gross injustice to allow this, in a case where the insured has acted in the utmost good faith, and honestly disclosed every fact material to be known, because, merely by inadvertence or oversight, an error of fact has been inserted in his application, — an error that is clearly immaterial, and that could not by possibility have affected the contract. It is true, that the parties have the right to make their own contract, and by its terms we must be governed; but before a court could hold a policy void, and all premiums paid thereon forfeited, because statements of this character in the application turned out to be untrue, they should be fully satisfied that such terms were fully and distinctly agreed to by the parties. It can not be supposed that an applicant for insurance would agree to pay annual premiums for life, for the purpose of securing the payment of the policy to his family, and agree to make the payment of any part of the sum depend upon the literal and exact accuracy of immaterial facts, to the importance of which his attention was not called. An applicant states that he was born in a certain county upon a certain day — facts which of his own knowledge he can not know — and upon this and other warranties, as it *627 is said, a policy is issued — the premiums are for a long lifetime paid — upon his death, it turns out that he was misinformed as to the county of his birth, and that in reality he made himself out older by one month than' he really was — an error in favor of the insurer. Shall this avoid the contract, when it w.as not regarded as material, and there was and could have been no fraudulent purpose? Other illustrations might be given.
To avoid the harshness and gross injustice of such constructions, it has been held, that statements of this character shall be held as representations rather than warranties, unless the contrary clearly appears. Bliss on Insurance. The statements in this case are called in the policy representations. This, of itself, would not be very important; but as the statements in question are not, in express terms,' made warranties, we are left to determine their true character upon a fair and just construction of the policy, and the application upon which it was issued. And in determining the question whether these statements are to be regarded as warranties or representations, we may look to the question whether these were acted upon by the Company and treated as material. 2 Pars. Con., 446.
Shall we hold, upon. this contract, that the policy was issued upon the warranty that the assured was born in Ottoway county, Virginia, when with slight attention it must have been known to both parties that there was no such county? This was clearly but a clerical mistake, and we think it could not by possibility have misled or deceived the defendants, and. the court below was correct in holding that this was *628 immaterial. Regarding, as we must, the substance of this contract, we cannot agree that the rights of the parties shall be made to depend upon a question like this. 2d. Shall we hold that the effect of this policy .is to depend upon the literal truth of the statement that the assured, at the date of the policy, resided in New Orleans? Did the policy so stipulate and agree? For what purpose was this statement required? Was it to enable the defendant to determine whether or not to accept the risk? We agree with the defendant’s counsel, that it is not the province of the court or jury, in every case, to determine whether or not the statement in question was material to the risk. If the insurer regard it as material to the risk in making the contract, then it must be so treated; for it is for the insurer to determine whether or not the fact is material. But did the defendant regard this statement as material? We think there is no difficulty in holding that it did not; and the contract furnishes satisfactory evidence upon this question. If the Company regarded the exact spot of his residence as material, why were they satisfied with the general statement that he resided in the City of New Orleans — a City covering a large space of territory, and doubtless embracing localities considered more or less healthy? Why was not the ward, street, and No. required ? And again, if the residence of the assured in the City of New Orleans was regarded as material, why was he not requii’ed to remain there? The policy upon its face contains a stipulation, that the assured shall not, without consent in writing, pass beyond the set- *629 tied limits of the United States, the British Provinces of the two Canadas, Nova Scotia or New Brunswick, or shall not, without such previous consent, visit those parts of the United States which lie in the malarious districts of the South, etc., etc. It is manifest from this, that with the exception stated, the assured was at liberty to remove to any place he might desire; and if the assured had in reality resided in the City of New Orleans at the date of the policy, he could assuredly, on the next day, have removed to Jefferson, without affecting the policy. If this be true, how is it possible that the insurers could have regarded it as important that on the 5th of October, 1866, the assured should have resided at New Orleans, and not at Jefferson, while on the next day they were willing he should be at liberty to remove from the one place to the other at pleasure? We conclude, that this statement was not received and acted upon as a warranty of. a fact, upon which, in any degree, the risk was assumed. It was regarded as proper, that the residence of the assured should be known, in order to enable the Company to communicate with him, to obtain information in regard to him, and for other purposes. It was merely for the purpose of furnishing to' the Company, means of information which they seemed to have obtained to their satisfaction; and for this purpose the statement was made.
We are of opinion that the Circuit Judge was not in error in instructing the jury, that the policy would not be avoided by proof that at its date the assured resided at Jefferson, a place contiguous to New Or *630 leans, unless it was affirmatively made to appear that the statement was fraudulently made, or was material to the risk.
With regard to the occupation of the assured, and, his service in the Confederate army, the Circuit Judge instructed the jury, that the assured having stated-that his occupation was merchant and steamboat agent,, proof that he was steamboat agent, without proof that he was also merchant — and that the assured having stated that he had been a volunteer in the Confederate States army four years, the proof only showing-that he was in said army one year — the policy would-not be on either of these grounds avoided.
We. can not say that there is any material error in this against the Company. Waiving the questions whether these representations are to be considered as. warranties, and important — where the forfeiture of the-entire contract is sought upon questions of this character, we think the insurers should be required to prove affirmatively that the statements are not true,, and not simply to leave it to the jury to infer that the statements are false, because the proof does not affirmatively show that they are true.
While, therefore, we think the Circuit Judge erred in construing the language contained in the application to mean, that the untrue answers or suppressions of fact which were declared to be a forfeiture of the contract, included only those untrue answers or sup-pressions of fact which related to the party’s health; yet when he came to charge specifically upon the facts,, which it was alleged were the untrue answers and *631 suppressions of facts which avoided the policy, the Court charged correctly, that the facts claimed to be established by the defense, would not defeat the policy. Being correct in this, the direct application of the law to the facts in proof, the error was not material.
It can not be doubted, that these grounds of defense would be regarded as having but little weight, were they presented in a case where the premiums had been regularly paid, and the policy kept up for years; and yet their force must be governed by the same rules in the present case. They can not be allowed to have any additional weight from tKe apparent want of merits of the plaintiff’s claim upon the first grounds.
If in reality the policy be regarded as binding— by an actual and bona fide delivery, without fraud, for a consideration that was accepted — then it must have the same force and effect, and be governed by the same rules as any other.
It is important that these questions be determined upon principles alike fair and just to the parties upon both sides. And while it is true the apparent merits of the plaintiff's claim are not so strong as in cases where the premiums have been actually paid; yet we think the case turns upon the question, "Whether the contract was in fact entered into and complete — Was the risk assumed? If the Company, through its agent, chose to assume the risk alone in consideration of Booker’s note, the result in law is the same as if the money had been paid.
Without reviewing the various propositions of law *632 submitted to be charged upon by the Circuit Judge, we are of opinion, that the charge was substantially correct, upon the questions of fact raised by the record.
Affirm the judgment.