FITCH v. AMERICAN POPULAR LIFE INSURANCE COMPANY,
appellant.

*Life insurance — conditions in policy — erroneous statements in application
when they avoid policy.*

A life insurance policy contained a provision that fraud or intentional misrepresentation should vitiate it, and that the statements in the application were warranties and in all respects true, and that no fact relative to the insured affecting the interest of the company which, whether material or not, would tend to influence the company to take the risk, was suppressed or omitted. The application upon which the policy was given contained a provision that the answers to the questions therein, and the statements made to the examining physician and signed by him, and the insured were warranties correct and true, and that there was not concealed or unmentioned therein any circumstance in relation to the past or present state of the health, habits of life, condition or intention of the insured, or any other fact concerning him, his relatives or ancestry with which the company should be made acquainted; and that if the statements, etc., were not true and correct the policy should be void.

Certain of the statements in the application were incorrect. It was stated that the insured never had any illness or local disease, while he had had some years previously a slight disease of the eyes; that a physician had never attended him, when three years before a physician had attended him; that his vocation was, and had been, a traveling agent, when, in fact, he was at one time a painter, and had been in the army; that he had lived in New York, and he did not state the fact that he had been in Virginia. *Held*, that the statements were warranties, and being untrue, whether as to material matters or not, the policy was avoided.

APPEAL by the defendant from a judgment for the plaintiff entered upon a verdict, and from an order denying a new trial.

The action was brought to recover upon a policy of insurance for $3,000, dated November 22, 1870, upon the life of one Oliver C. Fitch, who died December 17, 1870, and was tried at the Columbia circuit, January 20, 1873, before Mr. Justice INGALLS and a jury, and resulted in a verdict of $3,313.89 for the plaintiff.

The policy contained the following condition: "Fraud or intentional misrepresentation vitiates the policy, and the statements and declarations made in the written application for this policy, and on the faith of which it is issued, are warranties, and in all respects true, and do not suppress or omit any fact relative to the insured affecting the interest of the company, or which, whether material or not, would tend to influence the company in taking the risk."

The application contained the following statement: " I, the undersigned applicant, do hereby declare, that the preceding written answers to the annexed questions and the written statements in the preceding statement, declaration or warranty, together with the statements made to the examining physician, and signed by him and the next above person (the insured), and presented to the company, are warranties correct and true ; and that there is not concealed, withheld, nor unmentioned therein, one circumstance in relation to the past nor present state of the health, habits of life, condition, nor intention of the next above-named person, nor any other fact concerning the said person, nor the relatives nor ancestry of the said person with which the directors of said company ought to be made acquainted. * * * And it is hereby further agreed, that the preceding written answers given to the annexed questions, and the statements made in the preceding statement, declaration, or warranty, shall be the basis and form part of the contract or policy between the undersigned applicant and the said company; and if not in all respects true and correct, the policy shall be void."

The remaining facts will appear in the opinion.

*George Bliss,* for appellant.

*R. E. Andrews,* for respondent.

PARKER, J. This action is brought by the plaintiff on a policy of insurance issued by the defendants, by which the life of her husband, Oliver C. Fitch, was insured for the sum of $3,000.

The defendants, by their answer, and at the trial, denied their liability, on the ground that there was a breach of warranty, misrepresentation and concealment, which, by the terms of the policy, rendered the contract void ; and also on the ground that the insured committed suicide.

At the trial, the evidence bearing upon the last defense was excluded, because the policy contained no clause upon that subject. The jury found a verdict for the plaintiff for the amount insured by the policy, with interest. The plaintiff moved upon the minutes for a new trial, which was denied. Judgment was entered upon the verdict from which, and from the order denying a new trial, the defendants appealed. It appears by the written application for the insurance, that the insured was asked, by written interrogations,

whether he ever had any illness, local disease, or any injury in any organ ? to each of which inquiries he answered "*no.*"

He was in the same way required to name his family physician, and each one who had ever given him medical attendance, and if neither existed, some medical man and acquaintance who knew him well, to which his answer was, "have none." He was also asked to state his vocation, what it then was and what it had been, and his answer was "traveling agent."

He was in like manner inquired of as to his birth place, and answered "Tolland, Connecticut." He was then asked where he had lived since, and how long in each place, his answer was in "New York."

It was shown on the trial, without any contradiction, that he had, about six years before, a disease of his eyes known as conjunctivites, which required and received the care and skill of a physician for about a month, at Kinderhook, N. Y., his then residence. The attendance of the physician, Dr. Benson, was from 7th of November to the 1st of December, 1864, It was also found that, in September, 1864, he was in the army in Virginia, and was then attacked with some disease or received some injury to his eyes, so that he was confined to his tent, and subsequently was sent into hospital. This commenced as early as September 25th, and he was in hospital as late as October 24th. When he was attended by Dr. Benson, he was home on furlough, and was soon after transferred to the hospital in Albany, where he remained until the spring of 1865. Subsequent to the above attendance upon him, of Dr. Benson, and in 1867, the same physician was again once called to visit him professionally. It was proved by the testimony of the plaintiff, his widow, that the insured was, by trade, a painter; that, after his marriage in 1860, he worked at his trade till he went into the army in 1864; and, after his discharge from the army, in 1865, he again worked at the same trade, more or less, making it his business as late as during the summer of 1867. The fact that he had been in the army during the fall of 1864, was also proved and not disputed.

It is claimed, on the part of the defendant, that these discrepancies between the statement in the written application and the facts proved, invalidated the policy, and that plaintiff was, therefore, not entitled to recover upon it.

There can be no doubt that the statements made in the application and under this policy are warranties, for it is declared in the policy

that "the statements and declarations made in the written application for this policy, and on the faith of which it is issued, *are warranties,* and in all respects true; and subjoined to all the questions and answers in the application is the following; "I, the undersigned applicant, do hereby declare that the preceeding written answers to the annexed questions, and the written statements in the preceding statement, declaration and warranty, together with the statement made to the examining physician, and signed by him, and the next above person [insured], and presented to the company, are *warranties,* correct and true; and that there is not concealed, withheld nor unmentioned therein, any circumstance in relation to the past or present state of the health, habits of life, condition nor intention of the next above-named person     *   *   *   with which the directors of said company ought to be made acquainted.   And it is further *agreed* that the preceding written answers, given to the annexed questions, shall be the basis and form *part of the contract* or *policy* between the undersigned applicant and the said company, and, if not in all respects true and correct, the policy shall be void."

If it is possible to render the written answers to the questions in the paper called, generally, the application, which, when filled up, contains what is called the statement, declaration and warranty, warranties, it is done here.   See *Kelsey* v. *Universal Life Ins. Co.,* 35 Conn. 225; *Jennings* v. *Chenango M. Ins. Co.,* 2 Denio, 75; *Miles* v. *Conn. M. Ins. Co.,* 3 Gray, 580; *Miller* v. *Mutual Benefit Life Ins. Co.* (Supreme Court of Iowa, 1871) 2 Bigelow Life and Accident Ins. Rep. 693.

If, then, the answers above specified are shown to be false, untrue, in fact, from what cause soever it happened, whether from intention, forgetfulness or mistake, no matter from what cause, the policy is void.

I think each one of the answers to the interrogatories above specified, is shown to be untrue.   The proof that he had disease of or injury to his eyes, continuing for the space of at least two months, so severe as to disable him from duty while in the army, and to require medical treatment while on his furlough, is undisputed.   His answer in the negative, then to the inquiry, whether he had ever had local disease or injury to any organ, was false.   So his answer to the effect that no physician had ever given him medical attendance was also false.

His answers, too, in respect to his vocation and where he had lived since his birth, contained covert falsehoods — which, if not intended to deceive, were likely to do so. The inquiry as to his *vocation* was what it then was and what it had been. His answer, *traveling agent*, was true as to what it then was, but untrue as to what it had been, for the inquiry as to his past vocation obviously called for the statement that it had been a *painter* and a *soldier*, as well as a traveling agent. The answer was false from the clear and manifest failure to tell the whole truth.

The same is true of his answer to the inquiry where he had lived since his birth in Tolland. His answer, "New York," was not the whole truth, he had lived in Virginia also.

It being agreed between the parties to the policy that the "written answers to the annexed questions shall be the *basis* and form part of the contract or policy between them, and, if not in all respects true and correct, the policy shall be void," it follows that the falsity of the answers in the particulars above stated renders the policy void.

The learned counsel for the plaintiff insists that the answers above referred to were in respect to immaterial matters and therefore should not be deemed warranties within the true intent or meaning of the contract, and also that the whole is qualified by the declaration in the application that the policies of this company are made in entire unconditional, honest, good faith, and that it is expected that the application be made in good faith, and the assurance can be jeopardized only by dishonesty or inexcusable carelessness on the part of the applicant. I do not think the actual warranties agreed upon in the contract are prevented from taking effect by this preliminary disquisition in the beginning of the application upon the importance of honesty and carefulness on the part of the applicant. After all this comes the agreement that the answers to the annexed questions are warranties; that they form part of the contract or policy, and if not in all respects true, the policy shall be void, and after such caution and the accompanying explanation that if the insured cannot answer "yes" or "no" he can properly say, "I do not know." It is inexcusable carelessness, at least, to say "yes" or "no" untruly.

Nor will it do to say that the immateriality of the answers prevents their being warranties. Such construction would do away the distinction between representations and warranties. In *Daniels* 7. *Hudson River Fire Ins. Co.*, 12 Cush. 416. SHAW,

Ch. J., said, "the difference [between a warranty and a representation] is most essential. If any statement of fact, however unimportant it may have been, regarded by both parties to the contract is a warranty, and it happens to be untrue, it avoids the policy. If it be construed as a representation and is untrue, it does not avoid the contract if not willful, or if not material. To illustrate this, the application in answer to interrogatory is this: 'Ashes are taken up and removed in *iron* hods,' whereas it should turn out in evidence that ashes were taken up and removed in *copper* hods, perhaps a set recently purchased and unknown to the owner. If this was a warranty the policy is gone, but if a representation it would not, we presume, affect the policy, because not willful or designed to deceive, but more especially because it would be utterly immaterial, and would not have influenced the mind of either party in making the contract or in fixing its terms."

The question of warranty then does not depend upon that of materiality, as seen by Judge SHAW's illustration; a very immaterial thing may be the subject of a warranty, and if a warranty a breach of it will avoid the policy.

"It is a matter of no moment then, whether the warranty is material, or not as regards the risk; it must be complied with before the assured can maintain an action against the underwriters." *Jennings* v. *Chenango M. Ins. Co.* 2 Denio, 75, 81. See also *Anderson* v. *Fitzgerald*, 4 H. of L. Cases, 484. In this case the question was after mature examination and deliberation decided in the house of lords overruling the courts of exchequer and exchequer chambers in Ireland, in regard to statements made in the proposal for insurance that "some of the relatives of the insured had died of consumption or any other pulmonary complaint, and that his life had not been accepted or refused at any other assurance office." That they were warranties, and that being warranties it was of no consequence whether they were material to the risk or not; if they were untrue the policy was thereby rendered invalid, and no recovery could be had upon it. In the course of his opinion in that case the lord chancellor said "nothing can be more reasonable than that the parties entering into a contract of life insurance should determine for themselves what they think to be material, and if they choose to do so, to stipulate that unless the assured shall answer a certain question accurately, the policy or contract which they are entering into shall be void, and his false

answer will then avoid the policy." And see *Miles* v. *Conn. M. Ins. Co., supra.* Upon this view of the case the defendants were entitled to the nonsuit asked for at the close of the evidence.

The same view leads to the conclusion that the court erred in refusing to charge as requested by defendant's counsel, "that if they [the jury] believe that Fitch had had any disease of his eyes, such as to require care or attention, no recovery can be had."

The view above taken renders it unnecessary for us to examine the other questions raised in the case.

The judgment must be reversed and a new trial granted, with costs to abide event.

*Judgment reversed and new trial granted.*

MILLER, P. J., and P. POTTER, J., concurred.